Delbert THOMAS, Brenda Thomas and Delbert Thomas, Trustee for the Delbert Thomas Revocable Trust, Plaintiffs–Appellants,

v.

Charles KING and Charlene King, Defendants–Respondents.

No. 25981.

Missouri Court of Appeals, Southern District, Division Two.

April 25, 2005.

---

Jason N. Shaffer, Springfield, Richard L. Rollings, Jr., Ozark, for Appellants.

Andrew P. Wood, Sims, Johnson, Wood & Farber, Neosho, for Respondents.

JOHN E. PARRISH, Presiding Judge.

Delbert Thomas, Brenda Thomas, and Delbert Thomas, Trustee for the Delbert Thomas Revocable Trust, (collectively referred to as plaintiffs) appeal a judgment establishing a roadway easement for purposes of ingress and egress over property plaintiff trustee owns. Plaintiffs were enjoined from barricading or impeding the roadway. Charles King[1] and Charlene King (defendant) were awarded an easement for travel over the roadway and were permitted "to construct, erect or maintain cattle guards or gates" at the terminal ends of the roadway easement. This court affirms in part, reverses in part, and remands with directions.

Plaintiff trustee and defendant own adjacent tracts of land in McDonald County, Missouri. Defendant's tract is located west of the tract owned by plaintiff trustee. The eastern edge of defendant's tract adjoins the western edge of plaintiff trustee's property.[2] A county road runs along a portion of the southern edge of plaintiff trustee's property. The county road turns in a southerly direction away from that property some distance east of the southern boundary of defendant's property. Defendant and her predecessors in title had traveled from the county road, across plaintiff trustee's property, onto defendant's property for more than twenty years. Gates existed at each end of the roadway across the land now owned by plaintiff trustee. Gates were in place at those locations as early as the 1950s. The gates enclosed livestock and protected the pasture and hayfield the roadway crossed.

In September 2002, defendant and her husband, Charles King, installed cement ramps and cattle guards at each end of the roadway. This action was filed shortly thereafter. Plaintiffs contend that upon Delbert Thomas and Brenda Thomas purchasing their property, they gave verbal permission to Charles King and defendant to continue to use the roadway (which was characterized in the petition filed herein as "the lane") "so long as the gates were shut to protect the livestock and pasture."

By this action, plaintiffs sought (1) declaration that plaintiffs Delbert and Brenda Thomas initially granted Charles King and defendant permissive license to cross their land and that plaintiff trustee, as successor owner, continued to allow the permissive use of the roadway but that the permission has since been revoked; (2) declaration that defendant and Charles King committed trespass and were continuing to commit trespass; and (3) judgment ordering defendant and Charles King to cease and desist from further trespassing on the

---

1. Suggestion of death of Charles King was filed with this court. The parties also filed a stipulation of facts that recites that Charlene King is the sole owner of the real estate over which the trial court granted the easement that is the subject of this appeal.

2. Plaintiffs Delbert Thomas and Brenda Thomas owned the tract that plaintiff trustee now owns from 1982 until 1996 when it was conveyed to plaintiff trustee. Delbert Thomas and Brenda Thomas continue to manage the use of the property.

land. Plaintiffs sought to enjoin defendant and Charles King, their "tenants, agents, employees, attorneys and those persons in active concert or participation[,] from trespassing by using or accessing the lane across Plaintiffs' property."

Defendant and Charles King filed a two-count counterclaim. Count I asserted the roadway in question was a public road. Count II asserted defendant and Charles King were possessed of a prescriptive easement to use the roadway. They sought determination by the trial court of their claims that they were entitled to use the roadway in question for ingress and egress to their property and for injunctive relief.

■ The trial court found Count II of the counterclaim determinative.[3] It adjudged that "Defendants, their employees, agents, assignees and tenants, and Defendants' successors in interest" had "a roadway for ingress and egress across Plaintiffs' property" along the disputed strip. It declared the roadway to be "[a] 15 foot roadway." The trial court enjoined plaintiffs "and all persons acting in conjunction with or on Plaintiffs' behalf" from barricading or impeding the roadway. The trial court declared that defendant would "be allowed to construct, erect or maintain cattle guards or gates at the north and south end of said roadway."

■ Plaintiffs' first point on appeal contends the trial court erred in granting a prescriptive easement over plaintiffs' property because the use by defendant and Charles King of the roadway was not adverse in that defendant and Charles King and their predecessors' use was permissive and they believed the disputed roadway was a public road. "An easement by prescription is established by use that is continuous, uninterrupted, visible and adverse for a period of ten years." *Schrieber v. Aslinger*, 11 S.W.3d 816, 819 (Mo.App. 2000). The only element plaintiffs challenge is the requirement that the use by defendant and her predecessors in title was adverse. "Adverse use for purposes of establishing an easement by prescription is non-recognition of the owner's authority to permit or prohibit use." *Id.*

Plaintiffs' argument in Point I that the use of the roadway was not shown to be adverse is two-fold. They contend (a) that the evidence was that the use of the roadway was permissive and (b) that defendant and Mr. King believed the road was a public roadway, as asserted in Count I of the original counterclaim filed in this case; that this reliance was not adverse to plaintiffs.

■ *Whittom v. Alexander–Richardson*, 851 S.W.2d 504 (Mo. banc 1993), is apropos to plaintiffs' argument that defendant's assertion of the alternative claim that the roadway was a public road defeats the claim that the use of the road had been adverse to plaintiffs and, therefore, defeats defendant's claim that she possesses a prescriptive easement to use the road. In *Whittom*, as here, a determination was

---

**3.** Although the trial court announced a decision for plaintiffs on Count I of the counterclaim and noted the determination by docket entry, the judgment does not recite disposition of that claim. A judgment is final and, therefore, appealable when it disposes of all issues in the case and leaves nothing for future determination or when a claim is left undetermined and a determination is made that there is no just reason for delay. *See* Rule 74.01(b). That did not occur in this case. In this case, however, the trial court's judgment for defendants on Count II of their counterclaim necessarily constituted a rejection of the claim of a public road in Count I of that counterclaim. The judgment is, therefore, final and appealable, notwithstanding that it did not recite the determination of Count I of the counterclaim. *See Podlesak v. Wesley*, 849 S.W.2d 728, 730 (Mo.App.1993).

sought that parties to the action—in *Whittom* the plaintiffs, here defendant, and at the time the counterclaim was filed, her husband—that they had a right to use a certain roadway. The plaintiffs in *Whittom* asserted two grounds for their claim: (1) that they were entitled to use the road because of a common law dedication of the road as a public road; and (2) that they had acquired a prescriptive easement for its use. Here, the claim asserted by counterclaim was (1) that the road was a public road by reason of public use and expenditure of public moneys to maintain the road; and (2) alternatively, as in *Whittom,* that the parties claiming a right to use the road had acquired a prescriptive easement for its use.[4]

The claim in this case that the road was a public road was based on § 228.190.[5] The claim in *Whittom* that the road was a public road was based on the contention that there had been an implied dedication of the road as a public road. The trial court in *Whittom* required the plaintiffs to elect, prior to submission of the case, between the prescriptive easement theory by which they claimed a right to use the road and the common law dedication they pleaded. On appeal, *Whittom* held that the theories of recovery on which the plaintiffs relied were not inconsistent based on the facts of the case. *Whittom* concluded that "the plaintiffs properly [sought] only one remedy, right, or privilege: use of the roadway." *Id.* at 507. The court reversed the trial court on the basis that it was error to require the plaintiffs in that case to elect a remedy for the reason that the theories of recovery were not inconsistent under the facts in the case. *Whittom* explained:

The review of the law of prescriptive easements reveals that the alternative theories of prescriptive easement and common law dedication are not necessarily inconsistent or repugnant; proof of one theory does not necessarily disprove the other. As noted, the element of the intent required, or "permission" as the parties frame the issue in this case, for purposes of common law dedication may be inferred by the owner's actions, even if the owner had an actual intent not to dedicate the land for public use. *Connell [v. Jersey Realty & Inv. Co.,* 352 Mo. 1122], 180 S.W.2d [49] at 52 [1944]. The owner's intent to dedicate the land may be inferred by refusal to prohibit the public from using the land. The owner would be estopped from asserting that no dedication occurred since the public relied upon the owner's inaction as proof of the owner's intent to dedicate. *See Id.* It appears from the record in the present case that this was the plaintiff's theory of common law dedication.

*Id.* at 509.

In this case, defendant's alternate theories of recovery were (1) that the road was a public road that had continued to be used for many years, and (2) that defendant and her predecessors in title had used the road

---

**4.** "A public road, except state roads, may be established in three ways: '(1) under the provisions of Chapter 228, RSMo, [1994], (2) by prescription, or (3) by implied or common law dedication.'" *Kleeman v. Kingsley,* 88 S.W.3d 521, 522 n. 1 (Mo.App.2002), quoting *Coffey v. State ex rel. County of Stone,* 893 S.W.2d 843, 846 (Mo.App.1995). Section 228.190 provides, as pertinent here, "[A]ll roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same."

**5.** References to statutes are to RSMo 2000 unless stated otherwise.

without plaintiffs' permission for a sufficient time to acquire the claimed easement. The claim by defendant and Mr. King that the use of the road was adverse to plaintiffs, i.e., that it was without plaintiffs' or their predecessors in title's permission, was consistent with both theories of recovery. The use of the road without plaintiffs' permission supported the claim that the road had not been abandoned, i.e., that it had not been subject to nonuse by the public for the requisite five years as required by § 228.190 to show abandonment and vacation as a public road. It likewise supported defendant's and Mr. King's claim that they used the road without plaintiffs' permission during the time required to establish a prescriptive easement.

■ As in *Whittom,* the alternative theory of recovery was not inconsistent or repugnant. Defendant and Mr. King's pleading of the alternative remedy for prescriptive easement, along with the claim that the road was a public road, did not preclude the determination that a prescriptive easement existed.[6] Under the facts in the record, the alternative theories of public road by reason of chapter 228 and prescriptive easement were not inconsistent or repugnant. Proof of one theory would not necessarily disprove the other in that each was dependent on continued use of the roadway. Part (b) of Point I is of no consequence.

■ Part (a) claims the use of the roadway by defendant and Mr. King was not adverse in that plaintiffs had given permission for them to use the road and,

subsequently, when cattle guards were constructed, withdrawn that permission. Defendant's evidence demonstrated open, continuous, visible, and uninterrupted use of the roadway for a period of more than ten years. Those claims were not contested. Thus, the burden of showing that use was permissive rather than adverse is cast upon plaintiffs. *Speer v. Carr,* 429 S.W.2d 266, 268 (Mo.1968); *Fassold v. Schamburg,* 350 Mo. 464, 166 S.W.2d 571, 572 (1942). Plaintiffs presented evidence that the use of the roadway by defendant and Mr. King was permissive; that plaintiff Delbert Thomas gave defendant's and Mr. King's predecessor in title permission to use the roadway (which he characterized as "the pathway") so long as she closed gates at each end of it. However, these events occurred after plaintiffs purchased the property in 1982.

■ Defendant presented evidence that her and Mr. King's use was not permissive; that there were no conversations or agreements with plaintiffs over the use of the roadway; that she had not asked permission to use it.[7] Thus, whether the road's use was permissive or adverse is an issue involving credibility of the witnesses with respect to what occurred after plaintiffs acquired their property. The trial court is the ultimate judge of witness credibility. *Phillips v. Sommerer,* 917 S.W.2d 636, 640 (Mo.App.1996). "Conflicts in the evidence were for the trial court to resolve, and the facts must be taken in accordance with the result reached...." *Trenton Trust Co. v. Western Sur. Co.,* 599 S.W.2d 481, 483 (Mo. banc 1980). *See also Tad-*

---

**6.** Plaintiffs reliance on *Rosemann v. Adams,* 398 S.W.2d 855 (Mo.1966), is misplaced for the reason that the party in *Rosemann* who claimed an individual prescriptive easement believed the property in question was public and owned by the city. *Id.* at 858. He could not claim the easement for personal use adverse to the rights of other members of the public that he acknowledged. *See also Custom Muffler & Shocks v. Gordon Partnership,* 3 S.W.3d 811, 814–15 (Mo.App.1999).

**7.** Defendant and her husband acquired the property in 1986.

lock v. Otterbine, 767 S.W.2d 366, 370 (Mo. App.1989).

The trial court did not determine that the use by defendant and her predecessors in title was permissive. To the extent that factor impacted the judgment rendered, this court's review requires deference to the trial court in its resolution of conflicts in evidence adduced. This, however, is not the determinative issue.

Regardless of the issue over permissiveness of use during the time defendant owned her property, the roadway in question was, as the parties agreed, in existence as early as the 1950s. Plaintiffs presented no evidence as to the origin of the road, although evidence was presented that the road had been used by defendant, her husband, and their predecessors in title to access the property defendant now owns for more than 40 years.

■ As in *Tadlock v. Otterbine, supra,* evidence established that the use had been open, continuous, and uninterrupted. This gave rise to a presumption that the use was adverse. *Id.* at 370, citing *Parker v. Rogers,* 698 S.W.2d 617, 618 (Mo.App. 1985). "In the absence of some showing that the use was permissive in its origin, the burden is cast on the opposing party to show that the use was permissive rather than adverse." *Id.* The evidence was sufficient for the trial court to find that an easement had been established by adverse possession prior to plaintiffs or defendant acquiring their respective properties. Permission granted after an easement has already been established by adverse use has no legal effect. *Speer v. Carr,* 429 S.W.2d at 269; *Bryant v. Price,* 893 S.W.2d 856, 860 (Mo.App.1995). Point I is denied.

■ Point II asserts that the trial court erred in granting defendant the right to maintain cattle guards or gates at the north and south ends of the roadway because any prescriptive easement acquired was conditional and subject to plaintiffs' right to maintain gates on the property; that gates were maintained during the prescriptive period. Defendant concedes that use of the roadway was restricted by "gates across the disputed roadway at both the north and south ends." A prescriptive right is limited to the same extent of the use during the prescriptive period. *Holian v. Guenther,* 471 S.W.2d 457, 459 (Mo. 1971).

Installation of cattle guards by defendant in 2002 precipitated this action. Defendant testified that cattle guards had been placed at each end of the road for a short time prior to 1964. There was no other evidence of cattle guards having been on the road at any other time from the 1950s to 2002. The record does not support a finding that cattle guards were placed on the road for the requisite period of time for the right to maintain them to be acquired by prescription. Point II is granted. The part of the judgment that permits construction, erection, or maintenance of cattle guards by defendant will be reversed. Likewise, the right to maintain gates belongs to plaintiffs. Defendant acquired no right to do so by prescription. The part of the judgment granting that right to defendant will be reversed.

■ Plaintiffs' Point III argues that the trial court erred in determining the width of the easement to be 15 feet because evidence was that the road was of varying widths; that it was less than 15 feet wide. There was conflicting testimony concerning the width of the roadway. A surveyor who performed a survey of the road in 2003 on which the road was described as 30 feet wide testified that the actual surface of the road measured "anywhere from 12 to 15 feet" in three locations he measured. Defendant testified

**452**

that the width of the road varied to "probably 20–feet wide." She stated the gate across the road was 14 feet wide; that the cattle guard was 10 feet wide.

> [W]here the evidence is contradictory and conflicting, we defer to the trial court's opportunity to view the witnesses and assess their credibility. *Auxier v. Holmes,* 605 S.W.2d [804] at 805–806 [ (Mo.App.1980) ]. Conflicts in evidence are for the trial court to resolve and the facts must be taken in accordance with the result reached. *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d 481, 483 (Mo.banc 1980).

*Moss v. Ward,* 881 S.W.2d 238, 243 (Mo. App.1994). *See also Parker v. Rogers,* 698 S.W.2d 617 (Mo.App.1985). There was sufficient evidence for the trial court to find the width of the prescriptive easement to be 15 feet. Point III is denied.

The part of the judgment that permits construction, erection, or maintenance of cattle guards by anyone other than plaintiffs is reversed. The part of the judgment that permits anyone but plaintiffs to maintain gates on the north and south ends of the prescriptive easement area is reversed. In all other respects the judgment is affirmed. The case is remanded. The trial court is directed to enter judgment consistent with this opinion.

BATES, C.J., and SHRUM, J., concur.