"For a use to be continuous, a constant use is not required, but the essential attitude about the use must be continuous." Smith v. Chamblin Props., LLC , 201 S.W.3d 582, 587 (Mo. App. W.D. 2006). "In considering whether or not a use was uninterrupted, the courts look only at the actions of the party against whom the prescriptive right is claimed-i.e., the owner of the servient estate." Id. (quoting Tuf Flight Indus., Inc. v. Harris , 129 S.W.3d 486, 489 (Mo. App. W.D. 2004) ). "Thus, the owner of the property must interrupt the adverse use during the ten-year time period to destroy the prescriptive easement." Id.
La Crosse's argument improperly requires us to ignore the trial court's factual finding that, during the one-to-two-year period at issue, "the use decreased," but it was not "stopped or ... abandoned," and "the essential attitude about the use was continuous as required by Smith [, 201 S.W.3d at 587 ]." "Whether the use of the land establishes a prescriptive easement is a fact question to be inferred from the circumstances and the nature and character of the use." Wertz-Black , 524 S.W.3d at 72 (quoting Whittom v. Alexander-Richardson P'ship , 851 S.W.2d 504, 508 (Mo. banc 1993) ). And "[w]e defer to the factual findings of the trial judge, who is in a superior position to assess credibility." Id. (quoting Custom Muffler & Shocks, Inc. v. Gordon P'ship , 3 S.W.3d 811, 817 (Mo. App. W.D. 1999) ).
Regarding La Crosse's claim that Southside's use was insufficiently visible, La Crosse does not specify, other than the vacant tenancy argument above, how Southside failed to establish visibility.
*785 "Where the use is open 'so that any reasonable person would have discovered its existence,' the use is visible." Smith , 201 S.W.3d at 587 (quoting Tuf Flight Indus. , 129 S.W.3d at 490 ). "The key is not whether the owner knew about the use, but whether the use was open so that it could reasonably be discovered." Id. "[A]ctual knowledge is not required." Id. at 587.
As La Crosse does not claim that the use could not reasonably be discovered-indeed, as the trial court found, "La Crosse readily admitted that it was aware of the use"-we reject its challenge to the trial court's finding on visibility of Southside's use.
Point V is denied.
La Crosse's third and fourth points on appeal challenge the trial court's finding that Southside's use of the property was adverse.
"In the context of prescriptive easements, for the use to be 'adverse' it is not necessary that the user intend to violate the owner's rights; rather, 'it is necessary only for the use to proceed without recognition of the owner's authority to permit or prohibit the use.' " Wertz-Black , 524 S.W.3d at 74 (quoting Whittom , 851 S.W.2d at 508 ). "In the context of prescriptive easements, satisfaction of the prerequisite for adversity is commonly inferred, rather than directly proved." Whittom , 851 S.W.2d at 509. Indeed, "[p]roof that a particular use of another's land has in fact occurred normally justifies a finding that the use has been adverse." Id. "Consequently, where there has been a long and continuous use of that property, there is a presumption in favor of the party asserting a prescriptive easement that its use of the property is adverse and under a claim of right." Wertz-Black , 524 S.W.3d at 74. "The presumption places the burden on the landowner to demonstrate that the use was permissive and not adverse." Id. And, "[i]f the defendants did not interfere with plaintiffs' use, and if plaintiffs' use of the roadway was in a manner clearly indicating that plaintiffs claimed a nonexclusive right to use the property without the need to obtain defendants' permission, then the requirement for adversity would be satisfied." Whittom , 851 S.W.2d at 509.
In its third point on appeal, La Crosse argues that, by requesting an easement from La Crosse in both 2009 and 2016, Southside acknowledged La Crosse's superior title and thereby defeated any claim of adversity of use. But, in making this argument, La Crosse relies on cases involving adverse possession, rather than prescriptive easements. "There is a difference between adverse possession and a prescriptive easement. Acquiring title by adverse possession and acquiring use rights through an easement by prescription are different theories that require proof of different elements." Orla Holman Cemetery , 304 S.W.3d at 118 n.13 (emphasis in original). Though such acknowledgement might defeat a claim of "hostility" in a case involving adverse possession, it does not necessarily defeat a claim of "adversity" for a prescriptive easement. Compare Scott v. Hicks , 567 S.W.3d 266, 272 (Mo. App. S.D. 2019) ("An adverse possessor does not recognize the authority of the record titleholder to permit or to prevent his continued use of the property claimed.") (quoting Weaver v. Helm , 941 S.W.2d 801, 805 (Mo. App. S.D. 1997) ), with Whittom , 851 S.W.2d at 508 ("The claimant of an easement claims only the right to make certain use of the land and does not claim to possess the whole title and exclude the owner from it for all purposes.").
"Once a prescriptive easement has been established by adverse use, actions that normally would be evidence against *786 the prescriptive easement, such as asking permission to use the property, have no legal effect." Smith , 201 S.W.3d at 588 (holding that "the Smiths' attempt to buy or lease the property did not eliminate the prescriptive easement, which had already been established by adverse use for more than ten years").[5] Here, Southside's requested easement in 2016 was well outside the ten-year period and, thus, had no effect. Though 2009 was within the ten-year period, the trial court found that "the evidence [wa]s unclear as to whether this was merely a discussion of the cut-through traffic or whether there was an inquiry about La Crosse granting an easement." But, even if the conversations included a requested easement, under the facts of this case, the request and subsequent denial actually support Southside's claim of adversity. Southside had already been using the land for ingress and egress for approximately seven years before allegedly seeking an easement in 2009. Thus, any request for an easement would have evidenced Southside's recognition that its prior use was adverse to La Crosse's property interest. And Southside's continued use of the land despite La Crosse's emphatic denial of permission demonstrates that Southside intended to continue its adverse usage regardless of La Crosse's property interest.
As such, Point III is denied.
In its fourth point, La Crosse argues that, because the land at issue is subject to an existing easement in favor of others, La Crosse did not have the ability to block Southside's access and would not have done so as a matter of "neighborly courtesy."
The trial court found that, because "there has been a long and continuous use for a period of at least ten years and arguably fifteen years," the presumption of adversity applied. The trial court further determined that "La Crosse failed to counter the presumption by proving that permission was given for the use. La Crosse's testimony that it meant to be 'neighborly' does not render the use permissive." The trial court further found that "the letters sent by La Crosse's lawyer made clear that La Crosse never granted permission for the disputed use." (Emphasis added.) We agree.
La Crosse argues that the trial court should not have applied the presumption of adversity because La Crosse was precluded from blocking Southside's access by La Crosse's obligations under the existing easement in favor of the other nearby property owners. Though we agree that La Crosse was precluded from physically blocking the roadway, the fact of the matter is that La Crosse took no action whatsoever to stop Southside from using the access point. It could have erected signs indicating that the use was limited or it could have sought an injunction to preclude Southside from using the land. But La Crosse did nothing to curtail Southside's usage.
In any event, we agree with the trial court's determination that, even absent the presumption of adversity, "the fact that La Crosse never sought legal aid to stop the use of its land within the applicable time period constitutes acquiescence to the use." " '[A]cquiescence' does not mean an active permission or a license but means 'quiescence' and is a circumstance *787 indicative of adverse use." Jacobs v. Brewster , 354 Mo. 729, 190 S.W.2d 894, 899 (Mo. 1945). And, "[i]f the owner does not seek legal aid to stop the use of the land within the time period, he acquiesces to the use." Smith , 201 S.W.3d at 588.
In short, it was La Crosse's burden to prove that Southside's use was permissive, and it failed to meet that burden. As such, Point IV is denied.
In its sixth point on appeal, La Crosse argues that "[t]he judgment misapplies the law [in stating] that public use of property claimed by prescriptive easement may be used by [Southside] to support its claim for prescriptive easement." We disagree.
In Benson v. Fekete , 424 S.W.2d 729, 740 (Mo. banc 1968), the Missouri Supreme Court rejected this very same claim, holding that "[t]here is no merit in defendants' contention that evidence of use by the public cannot be utilized to prove the acquisition of a private easement by prescription by plaintiffs." See also Wertz-Black , 524 S.W.3d at 75 ("The 14th Street and Highway 65 entrances over the [defendant's] property were a 'public way' only in the sense that the public, like all the witnesses, used the entrances to access the businesses in the [plaintiff's] building. That does not 'destroy' a claim for prescriptive easement.").
Point VI is denied.
Finally, in its second point on appeal, La Crosse argues that "[a] necessary element of [a] judgement [granting a prescriptive easement] is the inclusion of a legal description for the property over which the plaintiff seeks an easement." It then argues that Southside failed to offer a legal description for the property it sought via prescriptive easement, and thereby failed to prove its case in chief. We disagree with La Crosse's challenge to the sufficiency of the evidence and hold that La Crosse waived its right to challenge the description in the judgment as insufficient.
Contrary to La Crosse's argument, there is nothing that required Southside to either plead or prove the location of the claimed prescriptive easement by metes and bounds. Rather, "[w]here one seeks a decree establishing an easement in his favor in the lands of another the [petition] ... [need only] use such descriptive terms as would enable a person going upon the land to find and identify the way by reference to such terms." Meyer v. Everett , 235 S.W.2d 130, 136 (Mo. App. 1950). And, in proving one's right to a prescriptive easement, all that is required is "[e]vidence [that] will enable the easement to be located." Dillon v. Norfleet , 813 S.W.2d 31, 32 (Mo. App. W.D. 1991). For example, in Dillon , this court held that the "plaintiffs' evidence was sufficient to establish the boundaries of the alleyway [claimed by prescriptive easement]" where
[s]everal witnesses estimated the width of the alley to be 12 feet[; o]ne of the plaintiffs by actual measure had found the length of the alleyway ... to be 301.6 feet, although only the south 200 feet of the alleyway was on defendants' property[; t]he south boundary of the alleyway was testified to be 33rd Street[; and t]he alleyway was described in the testimony as running along the back of plaintiffs' properties, and as being located on defendants' land along the entire 200-foot north-south length thereof.
Id. at 33.
Here, all of the evidence indicated that the easement sought was the existing paved roadway beginning at the second Grindstone Parkway access point in La Crosse's parking lot and travelling along the existing easement to Southside's parking lot. As such, the evidence was sufficient *788 to establish the boundaries of the proposed easement.
With respect to La Crosse's argument that the judgment lacks certainty regarding the location of the easement, we hold that La Crosse waived this claim by failing to raise it below.
In its brief, La Crosse argues that "[t]he description provided [in the amended judgment] fails to place with certainty the position of [Southside]'s easement on [La Crosse]'s parking lot, or to define the parameters of such easement on the lots (i.e. Lots 7, 8, 9, or 10) which it touches and/or encumbers." But La Crosse did not raise this challenge below.
Rule 78.07(c) directs that, "[i]n all cases, allegations of error relating to the form or language of the judgment ... must be raised in a motion to amend the judgment in order to be preserved for appellate review." (Emphasis added.) "The purpose of Rule 78.07(c) is to ensure that complaints about the form and language of judgments are brought to the attention of the trial court where they can be easily corrected, alleviating needless appeals, reversals, and rehearings." Dunlap v. State , 452 S.W.3d 257, 263 (Mo. App. W.D. 2015) (quoting Gerlt v. State , 339 S.W.3d 578, 584 (Mo. App. W.D. 2011) ). Accordingly, the failure to file a Rule 78.07(c) motion constitutes a waiver of any subsequent argument challenging the form or language of the judgment. Sneil, LLC v. Tybe Learning Ctr., Inc. , 370 S.W.3d 562, 574 (Mo. banc 2012) (holding that the appellant "waived any such argument [that the trial court's findings were insufficient] by failing to file a post-trial motion to amend the judgment.").
Here, as discussed above, though La Crosse filed a motion to amend the original judgment, it never filed a motion to amend the amended judgment. Rule 78.07(d) provides that, "[u]nless an amended judgment shall otherwise specify, an amended judgment shall be deemed a new judgment for all purposes." These purposes include "the time from which a party can file an authorized post-trial motion from the amended judgment." Mo. Parks Ass'n , 316 S.W.3d at 382. Because the amended judgment was a "new judgment for all purposes," La Crosse had an additional thirty days in which to file a motion to amend the amended judgment, wherein it could raise its challenge to the language of the judgment describing the property at issue. Heifetz , 554 S.W.3d at 394. But, because it failed to do so, its challenge-raised for the first time on appeal-is waived.
Point II is denied.
Conclusion
The trial court did not err in granting Southside a prescriptive easement. Its judgment is affirmed.
Thomas N. Chapman, Judge, and Cory Atkins, Special Judge, concur.

See also Speer v. Carr , 429 S.W.2d 266, 269 (Mo. 1968) ("[I]t is a general rule that an easement, once established, is not divested by the acts of the owner of the easement in seeking and obtaining permission or license from the owner of the servient estate to make the same use of the latter's premises as could be made under the existing servitude." (quoting 25 Am.Jur.2d, Easements and Licenses, § 109, p. 513) ).