

# Missouri Court of Appeals
## Southern District

### In Division

ROY A. HODGKINSON, ELISABETH )
HODGKINSON, ROBERT CAMPBELL, )
STEPHEN CAMPBELL and AMY )
CAMPBELL, and JUDY WOLF, )
                                     )
       Plaintiffs-Respondents, )
                                     )
and SHIRLEY DEINES, )
                                     )
       Plaintiff, )
                                     )
       v. )          No. SD37926
                                     )
STEVEN HATTEN, )       **Filed: March 22, 2024**
                                     )
       Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF MCDONALD COUNTY

The Honorable Jacob R. Skouby, Special Judge

### <u>AFFIRMED</u>

Steven Hatten ("Steven") appeals a judgment of the Circuit Court of McDonald County ("trial court") granting Roy Hodgkinson ("Roy"), Elisabeth Hodgkinson ("Elisabeth"), Robert Campbell ("Robert"), Stephen Campbell ("Stephen"), Amy Campbell ("Amy"), and Judy Wolf ("Judy") (collectively, "Respondents") a prescriptive easement to use a road known as Hodgkinson's Lane (the "Lane") located on Steven's

1

property.[1]  Raising two points on appeal, Steven argues the trial court misapplied the law by finding Roy was entitled to a prescriptive easement because the evidence established Roy believed his use of the Lane was permissive (Point I) and further misapplied the law by finding Respondents were entitled to a prescriptive easement because the evidence established Respondents all believed the Lane was a public road (Point II).  Finding no error, we affirm the trial court's judgment.[2]

### Factual Background and Procedural History

Steven owns approximately 60 acres in McDonald County described as:  All that part of the East half (E ½) of the Northwest Quarter (NW ¼) of section 34, Township 22, Range 31, McDonald County, Missouri, lying North of Highway "K" (the "Property").  Steven purchased the Property from Leroy Chad Williams ("Chad")[3] in April of 2015, and Chad previously purchased the Property "around 2002."  The Lane existed on the Property when Chad bought it.  The Lane begins at Highway K and runs north through the Property to the Cyclone Hills Subdivision ("Cyclone Hills").

Roy owns property located in Cyclone Hills described as, "All of Lot 4 of Cyclone Hills Subdivision 1, as per the recorded plat thereof, McDonald County, Missouri."  Judy owns property connected to Cyclone Hills off of Wishbone Lane and

---

[1] Due to the related nature of the parties and identical surnames, this Court will refer to certain persons by their first names, unless otherwise indicated.  No disrespect or familiarity is intended.

[2] Steven's notice of appeal named Shirley Deines ("Shirley") as a respondent in this appeal, but the trial court's judgment did not grant her a prescriptive easement nor does she raise a cross appeal asserting the trial court erred by not granting her request for a prescriptive easement.  As such, any claim of right Shirley may have as to the Lane is not subject to this appeal.

[3] The trial court record indicates Chad's first name is "Leroy," but both the parties and trial transcript refer to him as "Chad."  We have chosen to use "Chad" for consistency.

north of the Property. Stephen's family owns property at the end of the Lane in Cyclone Hills, and Elisabeth owns Lot Five in Cyclone Hills.

At some point after Chad bought the Property and after he started seeing vehicles using the Lane, he dug a four-foot hole across the Lane. Elisabeth confronted Chad about the hole and emphasized that her father, Roy, was in poor health, and the Lane through the Property was, "at times[,]" the only access for Roy or emergency vehicles to get in or out. Chad agreed that "under dire circumstances," if Roy needed medical assistance and if another access road was impassable, Roy and Elisabeth could use the Lane through the Property for "emergency purposes and/or health issues" but "only under those circumstances[.]" Afterwards, Roy put some gravel on the Lane, despite Chad advising against it. Chad told Roy the Lane was "a logging road that belonged to [Chad]."

After Steven purchased the Property, he tried to close the Lane again. He pulled down a realtor sign someone had placed at the end of the Lane and went to the sheriff's department to inform them the Lane on his Property was not an access for Cyclone Hills or any other property. Steven also notified 911 he was closing the Lane through his Property and hired someone to repair the culvert under Swan Lane, which he claimed provided access to Cyclone Hills. Sometime around May 1, 2016, Steven installed a gate across the Lane on the Property. Roy filed suit against Steven, and Roy put more gravel on the Lane the following week.

Elisabeth, Robert, Stephen, Amy, Judy, and Shirley joined Roy's suit as co-plaintiffs; and Steven filed a counterclaim for trespass against all plaintiffs. The case proceeded to a bench trial on August 4, 2021.

At trial, a maintenance worker for McDonald County testified he performed road grader maintenance on the Lane for the County, which he knew as "Hodgkinson Lane[,]" in the 1990s. When the maintenance worker was grading the Lane for the County, he noticed several people buying and moving into the lots behind the Property. The worker further testified Swan Lane was not passable up to those lots after a "[b]ig washout[,]" which the County never fixed.

A repossession agent testified he first used the Lane to access Cyclone Hills "around 2000." He repossessed five cars in two months in early 2000, and then occasionally repossessed more vehicles after that. He noted there are several houses and trailers on the Lane. Since 2000, the repossession agent only went to Cyclone Hills to see Roy and to take Roy's cars. The repossession agent never asked Chad or Steven for permission to use the Lane. When the repossession agent tried to access Cyclone Hills through Swan Lane six years before trial, he found it was not passable.

Another witness, someone living on Swan Lane, testified the only person he saw using Swan Lane to access Cyclone Hills was the phone company. The Swan Lane resident owned four properties along Swan Lane, moved to one property in 1997, and then moved to another along Swan Lane in 2015. The Swan Lane resident further testified he had used the Lane to access properties by Roy since 1997; that Roy and Elisabeth used the Lane to access their properties; and that he never saw Roy, Elisabeth, Robert, Stephen, or Judy use Swan Lane to access their properties. The Swan Lane resident never asked permission to use the Lane to see Roy, and, according to him, "Everybody knows it's a road" and "Everybody has rode [sic] down that lane[.]"

4

Stephen and Robert's father, Jesse Campbell ("Jesse"), testified he used the Lane to access Cyclone Hills, including Stephen's, Robert's, and Judy's properties, since 1969. Whenever Jesse used the Lane, he did not ask Chad or anyone else for permission. When Chad dug a ditch across the Lane to close it in 2000, Jesse and Roy went to the local courthouse to speak with county commissioners and to "get that ditch taken care of[.]" It was at this time Jesse found out McDonald County decommissioned the Lane as a county road in "early 2000" because it lacked the manpower and money to maintain the Lane properly. Roy and Jesse discussed the matter with Chad, and the ditch was later filled. Thereafter, Roy continued to maintain the Lane for "15 to 18 years[.]" Jesse also testified he never used Swan Lane to access Cyclone Hills because Swan Lane is impassable unless one uses a "four-wheeler[,]" and he did not know anyone owning property in, or connected to, Cyclone Hills who used Swan Lane to access their property by vehicle.

Stephen testified he lived in the area of Cyclone Hills his entire life and had likewise used the Lane to access his property all of his life. Stephen was 50 years old at the time of trial, and he never asked anybody for permission before using the Lane to access his property. Stephen also testified he had no personal knowledge of anyone using Swan Lane to access Cyclone Hills or any property connected to the subdivision.

Roy testified he had lived on his property in Cyclone Hills since 1996. According to Roy, the Lane was "the only way" he went in and out of Cyclone Hills, and medical items were delivered "every couple months" using the Lane. A propane company also used the Lane to deliver propane. Roy testified he did not ask permission to use the Lane when he started using it, though he confirmed Chad once tried to keep him from using the

Lane by digging a trench. Roy had used the Lane as an access road for "[a]round 20 years" by the time Steven put out a letter saying he was going to close it.

Judy testified she had been using the Lane, and no other access, to get to the back side of her ranch property since 1999, but she also said the Lane had "been used since '63." She used the Lane "probably" monthly but on a daily basis during the rainy season because the Lane was the only way out once the water rose. Judy testified further that she used the Lane to retrieve cattle from the top of her property because the bottom land portion was only passable by tractor or four-wheel drive pickup. No one ever told Judy she could not use the Lane, and she never asked for permission before using it.

On January 4, 2023, the trial court entered its amended judgment in favor of Respondents.[4] The trial court found, "there is nothing adverse about [Respondents'] use of the [Lane] when it was generally looked upon as a public road." It also found Chad "indicated that he only gave permission to the Hodgkinson's [sic] to use the [Lane] 'under dire circumstances[,]'" and therefore:

> [T]he Hodgkinson's [sic] everyday use of the road was violative of the conditional permission given to them by [Chad], and thus, non-permissive. The other [Respondents] testified they never sought, nor were they ever given permission to use the [Lane].

The trial court's judgment granted Respondents' request for a prescriptive easement to use the Lane through the Property, denied Shirley's request for a prescriptive easement

---

[4] The trial court previously entered a judgment in favor of Respondents on July 5, 2022, but this judgment did not resolve Steven's counterclaim for trespass. This Court dismissed Steven's appeal from the trial court's initial judgment due to the lack of a final judgment. ***Hodgkinson v. Hatten***, No. SD37690 (Mo. App. S.D. 2022).

6

because there was "no evidence" she used the Lane, and denied Steven's counterclaim for trespass. This timely appeal followed.

## Standard of Review

We review a trial court judgment granting or denying a request to recognize a prescriptive easement using the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Eakins v. Sadler*, 683 S.W.2d 303, 305 (Mo. App. S.D. 1984). Accordingly, we "must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Humphreys v. Wooldridge*, 408 S.W.3d 261, 264 (Mo. App. S.D. 2013) (quoting *Grider v. Tingle*, 325 S.W.3d 437, 440 (Mo. App. S.D. 2010)). "We view the evidence and all reasonable inferences in the light most favorable to the [trial] court's judgment." *Baldwin v. Baldwin*, 667 S.W.3d 199, 203 (Mo. App. S.D. 2023) (quoting *Stevenson v. Maxwell*, 605 S.W.3d 1, 5 (Mo. App. W.D. 2020)). "The credibility of the witnesses and the weight to be given to their testimony is to be determined by the trial court, which is free to believe none, part or all of the testimony of any witness." *Humphreys*, 408 S.W.3d at 264 (quoting *Ries v. Shoemake*, 359 S.W.3d 137, 139 (Mo. App. S.D. 2012)). When analyzing whether the trial court erroneously declared or applied the law, we defer to the trial court's factual determinations but review the trial court's legal conclusions and its application of the law to the facts *de novo*. *Singleton v. Singleton*, 659 S.W.3d 336, 341 (Mo. banc 2023); *Wallace v. Byrne*, 672 S.W.3d 96, 107 (Mo. App. E.D. 2023).

**Analysis**

Point I – The Trial Court did not Misapply the Law by Finding Roy's Use of the Lane was Adverse.

Steven argues in Point I that the trial court misapplied the law by finding Roy was entitled to a prescriptive easement because he "had the burden to establish that his use of the [L]ane on [the] [P]roperty was not permissive and the evidence established that at all times when [Roy] used the [L]ane, he believed his use was permissive." "A party claiming a prescriptive easement bears the burden of proving five elements by clear and convincing evidence: use of the claimed easement was (1) continuous; (2) uninterrupted; (3) visible; and (4) adverse for (5) a period of 10 years." *Warren v. Dunlap*, 532 S.W.3d 725, 728 (Mo. App. S.D. 2017) (quoting *Orla Holman Cemetery, Inc. v. Robert W. Plaster Trust*, 304 S.W.3d 112, 118-19 (Mo. banc 2010)) (internal quotation marks omitted). Steven's argument focuses on the element of adversity and does not dispute that Roy's use of the Lane was continuous, uninterrupted, visible, or for a period of at least 10 years.

"Adverse use for purposes of establishing an easement by prescription is non-recognition of the owner's authority to permit or prohibit use." *Thomas v. King*, 160 S.W.3d 445, 448 (Mo. App. S.D. 2005) (quoting *Schrieber v. Aslinger*, 11 S.W.3d 816, 819 (Mo. App. S.D. 2000)). Conversely, the use of land "that is permissive cannot be grounds for a prescriptive easement because permissive use destroys the adversity requirement." *Daniels-Kerr v. Crosby*, 484 S.W.3d 798, 804 (Mo. App. W.D. 2016); *see also Homan v. Hutchison*, 817 S.W.2d 944, 947 (Mo. App. W.D. 1991) ("A use is not deemed to be adverse where the user recognizes the authority of those against whom the use is claimed to prevent or prohibit the use."). Adversity is commonly inferred rather

than directly proven. ***Wertz-Black v. Guesa USA, LLC***, 524 S.W.3d 68, 74 (Mo. App. W.D. 2017); ***Moore v. Quirk***, 81 S.W.3d 717, 719-20 (Mo. App. S.D. 2002). "[W]here there has been a long and continuous use of [the] property, there is a presumption in favor of the party asserting a prescriptive easement that its use of the property is adverse and under a claim of right." ***Southside Ventures, LLC v. La Crosse Lumber Co.***, 574 S.W.3d 771, 785 (Mo. App. W.D. 2019) (quoting ***Wertz-Black***, 524 S.W.3d at 74).

Steven claims the trial court should not have applied this presumption of adversity to Roy's claim for a prescriptive easement because Roy testified there was "no time" he felt he was using the Lane without permission, and, therefore, evidence at trial established his use of the Lane was permissive. However, the trial court's judgment gives no indication it applied any presumption to Roy's claim. Rather, the trial court concluded Roy's and Elisabeth's everyday use of the Lane was "violative of the conditional permission given" by Chad. Chad testified he only permitted Roy to use the Lane in "dire circumstances" after Chad purchased the Property in 2002. Yet Roy continued to use the Lane, and not Swan Lane, as an access road to reach his residence, for his personal medical and propane deliveries, and for his acquaintances to visit, including the repossession agent. Roy's generalized use of the Lane contradicted Chad's terms, and the trial court could find adversity from that use. *See* ***id.*** at 786 ("[The] continued use of the land despite [the] emphatic denial of permission demonstrates that [claimant] intended to continue its adverse usage regardless of [the owner's] property interest."); *see also* ***Wertz-Black***, 524 S.W.3d at 74 (determining claimants proved adversity by "openly and consistently demonstrat[ing] their non-recognition of a need to seek permission to use the property for access and parking"); ***Leonard v. Robinson***, 276

9

S.W.3d 868, 874 (Mo. App. E.D. 2009) ("All that is necessary for a use to be adverse is the non-recognition of the owner's authority to permit or prohibit the continued use of the land.") (internal quotation marks and citation omitted).

To the extent Steven relies on conflicting evidence to argue Roy's use of the Lane was permissive, he does not raise a proper misapplication-of-the-law challenge. This Court will not review the evidence *de novo*, *see* **Wallace**, 672 S.W.3d at 107, and "whether the [Lane's] use was permissive or adverse is an issue involving credibility of the witnesses[.]" **Thomas**, 160 S.W.3d at 450. As such, the trial court was empowered to resolve any conflicts in that evidence. **Id.** "[W]e must defer to the trial court's credibility determinations and its prerogative to believe all, part, or none of the evidence offered . . . ." **Warren**, 532 S.W.3d at 729; *see also* **Gault v. Bahm**, 826 S.W.2d 875, 881 (Mo. App. S.D. 1992) (stating the appellate court was "bound by [the trial court's] determination" after it "made a specific finding" regarding a claimant's adverse use of a road). The trial court concluded Roy's use of the Lane was adverse to Chad's interests, and it therefore did not misapply the law by finding Roy was entitled to a prescriptive easement. *See* **Southside Ventures**, 574 S.W.3d at 786 (trial court did not err by granting a prescriptive easement after the evidence demonstrated adverse use). Point I is denied.

Point II – The Trial Court did not Misapply the Law by Granting Respondents a Prescriptive Easement.

In Point II, Steven argues the trial court misapplied the law by granting a prescriptive easement to Respondents because, while they had the burden to establish their use of the Lane was exclusive and under individual claim of right, "the evidence established that all [Respondents] believed that the [L]ane was a public road and such use is neither exclusive nor under individual claim of right." This point is inherently flawed

10

because exclusivity is an element of adverse possession, not prescriptive easements.  *See Warren*, 532 S.W.3d at 728 (contrasting the requirements for adverse possession and prescriptive easements).  For prescriptive easements, "[i]t is not required that the adverse use be exclusive."  *Whittom v. Alexander-Richardson P'ship*, 851 S.W.2d 504, 508 (Mo. banc 1993); *Wertz-Black*, 524 S.W.3d at 74 (stating similar).  Respondents therefore did not bear any burden to prove their use of the Lane was exclusive.

Additionally, while Steven has asserted a misapplication-of-the-law challenge in Point II, the corresponding argument portion of his brief does not identify any legal misapplication.  Instead, it disputes the evidence underlying the trial court's judgment.[5] He claims Respondents, the maintenance worker for McDonald County, and the Swan Lane resident, "[w]ithout exception," all testified they believed the Lane was a public or county road.[6]  "No claim of individual right of easement by prescription may arise by

---

[5] As observed by *Wertz-Black*, an argument that a trial court "misapplied the law" because there is no evidence supporting the judgment granting a prescriptive easement is effectively a claim "that there was insufficient evidence to support the declaration of [a] prescriptive easement[]." 524 S.W.3d at 72.  However, even if we were to recast Steven's Point II as a challenge to the factual support underlying the trial court's judgment, Steven's briefing provides nothing for substantive review.  Appellants arguing that a civil, trial court judgment is not supported by substantial evidence or is against the weight of the evidence must, *inter alia*, identify all favorable evidence supporting a disputed factual proposition in the judgment.  *Int. of Z.Y.M.B.*, 663 S.W.3d 869, 874 (Mo. App. S.D. 2023).  Steven's briefing for Point II, amounting to little more than a page, does not attempt to identify all favorable evidence supporting the trial court's finding of adverse use or other findings required for a prescriptive easement.

[6] Steven directs us to:  (1) Roy's response of "Yes" to the question, "Did you think it was a county road?"; (2) Jesse's testimony that the Lane "used to just be a county road"; (3) Stephen's response of "Yes" to the question, "So did you think it was a public road?"; (4) Judy's testimony stating she "assumed it was a county road" when she used the Lane since 1999; (5) testimony

11

virtue" of using a path while believing it is a public road. ***Rosemann v. Adams***, 398 S.W.2d 855, 858 (Mo. 1966); *see also **Thomas***, 160 S.W.3d at 450 n.6 (citing ***Rosemann***, 398 S.W.2d at 858). If one believes a road is public, he or she is necessarily not acting adverse to others while using the road. ***Homan***, 817 S.W.2d at 950 ("[T]he belief that a road is a public road does not supply an element of adverse use."). Here, the testimony that they believed the Lane "was" a public road could be interpreted as the Lane having been a public road in the past but not during the last 10 years before the time Respondents filed their petition. Regardless, and even if Respondents referred to the Lane as a public road, when considering whether the trial court misapplied the law we defer to the trial court's factual determinations. ***Singleton***, 659 S.W.3d at 341.

Jesse testified that, while the Lane was once a public road, McDonald County decommissioned it in early 2000. Respondents thereafter all continued to use the Lane to access Cyclone Hills and adjacent properties for more than 10 years before Steven attempted to close the Lane. As previously discussed, the trial court found Roy's and Elisabeth's use of the Lane was adverse; and it could presume adversity from Robert's, Stephen's, Amy's, and Judy's continued use of the same Lane. ***Southside Ventures.***, 574 S.W.3d at 785. To the extent any witness described the Lane as being a public road after McDonald County decommissioned the Lane, those "[c]onflicts in the evidence were for the trial court to resolve, and the facts must be taken in accordance with the result reached." ***Waters v. G&B Feeds, Inc.***, 306 S.W.3d 138, 145 (Mo. App. S.D. 2010) (quoting ***Thomas***, 160 S.W.3d at 450); *see also **Moore***, 81 S.W.3d at 722 ("Contrary

---

from the McDonald County maintenance worker that he thought the Lane was a county road; and (6) testimony from the Swan Lane resident that the Lane has "always been a road."

evidence [supporting a finding of adverse use] was presented as well, and the applicable standard of review requires us to view the evidence in the light most favorable to the judgment and to ignore contrary evidence.").  The trial court was free to conclude Respondents "had intended to continue to use the pathway as they had been doing for many years despite [Chad's and Steven's] attempts to control that use" after reviewing the testimony as a whole.  *Moore*, 81 S.W.3d at 722.

The judgment also notably contains no findings of fact regarding anyone's belief that the Lane was still a public road after 2000.  Under our standard of review, we presume from the lack of findings that the trial court accepted Jesse's testimony as credible while not crediting any of the testimony upon which Steven relies.  *Warren*, 532 S.W.3d at 729-30; *see also* *Moss v. Ward*, 881 S.W.2d 238, 243 (Mo. App. S.D. 1994) ("The trial court was entitled to, and apparently did, believe the evidence supporting this portion of the judgment.").  "Testimony of permissive use that is not believed does not cause the inference or presumption of adverse use to vanish."  *Gault*, 826 S.W.2d at 883.  "As a result, [Steven's misapplication-of-the-law] argument – resting only on evidence that we must assume the trial court did not credit – must fail."  *Warren*, 532 S.W.3d at 730.

The trial court did not misapply the law by granting Respondents' request for a prescriptive easement after determining their use of the Lane was continuous, uninterrupted, visible, and adverse for a period of 10 years.  *See id.* at 728 (listing the legal requirements to acquire a prescriptive easement).  Point II is denied.

The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS