78

**GARCIA v. ZAMORA et al. (No. 1166–5142.)**

Commission of Appeals of Texas, Section A. Feb. 6, 1929.

Graham & Graham, of Brownsville, and Ben H. Powell and E. C. Gaines, both of Austin, for plaintiff in error.

John I. Kleiber and H. B. Galbraith, both of Brownsville, for defendants in error.

NICKELS, J. In trespass to try title brought by Zamora et al., Garcia answered, inter alia, that, by deed executed and delivered December 16, 1924, by Carmen de la Rosa de Zamora he acquired title to the land.

Preciliano et al., claiming in whole or part through Carmen, deceased, in reply alleged: "That at the time of the execution and delivery by the said Carmen de la Rosa de Zambora of the purported deed to * * * Garcia, she had reached ·the extremely advanced age of ninety-six years, more or less, had been bed-ridden for many months prior to the execution and delivery of said deed, had been waited upon and attended constantly by the women members of her family, in the simplest affairs of life, and in short had been so ravaged by the senile decay ordinarily attendant upon such advanced age that she had neither the power, intelligence or capacity to understand, execute or make this or any other deed or transaction dealing with financial matters of the magnitude herein involved, or financial matters of any magnitude, and was without mind in law, a fact known to said Garcia; a fact taken advantage of by the said Garcia, who, in secret, with the connivance and help * * * of Calixto Hinojosa, a son of said Zamora by a prior marriage, and other persons, overreached and defrauded the said Carmen * * * and persuaded her, in her second childhood, to sign, for a grossly inadequate consideration * * * the deed to this valuable property, for which reason the same is null and void, secured as it was by fraud upon the said Carmen * * * who, as hereinbefore alleged, had neither power nor capacity to understand the terms, force and effect of same."

Garcia seasonably prepared and duly presented for submission an issue in these words: "Did Mrs. Zamora at the time she executed and delivered the deed to M. J. Garcia in 1924 * * * understand the nature and effect of said conveyance?" Submission of the issue, thus requested, was refused, and, over objection of Garcia, the judge prepared and submitted one of this form: "Did M. J. Garcia, defendant, perpetrate a fraud on Carmen de la Rosa de Zamora in securing the deed of December 16th, 1924?" It was answered "Yes." In immediate connection, the jury was instructed that other issues submitted need not be considered if an affirmative answer were made to the first. The other issues were not answered.

The finding of fraud, thus made, is the predicate of judgment rendered for Preciliano et al., affirmed by the Court of Civil Appeals. 2 S.W.(2d) 907.

Refusal of submission of the issue framed and requested by Garcia was duly assigned for error in the Court of Civil Appeals. In the petition here it is assigned for error of itself and also as reason preclusive of authority in the Court of Civil Appeals to make various "findings" such, e. g., as "the evidence showed * * * that the old woman was an imbecile," "the evidence fully showed that the old woman was incapable of executing a deed for months before she made her mark at the end of the deed to appellant," etc.

We notice the state of proof only so far as may be necessary to posture the questions

raised. Mrs. Jones, as notary public, took Mrs. Zamora's acknowledgment of the deed. She testified, in part: "I explained the deed to her and she knew just where the property was and who she was selling it to, and I explained it to her myself. Absolutely she knew where the property was and what the property was that the deed was covering, she knew exactly what it was. When I first went there, she wasn't in the room where I took the acknowledgment; she came in alone into the room, she walked in. When I went there I read the deed to her in substance—I can talk Spanish as well I do English—and I told her just exactly what she was selling and where the property was and I asked her 'Do you know where this property is?' 'Yes, ma'am.' And she told me just exactly where it was. * * * I am sure that Mrs. Zamora was in a condition so that she knew what she was doing and what she was conveying and what she was to get for it according to the instrument. I didn't see anything out of the ordinary in her for an old lady, no indeed. * * * She walked into the room fully dressed."

Gonzales, a neighbor and a storekeeper from whom Mrs. Zamora bought groceries, said that while the "transactions" consummated by the deed were "being had" she "came to his home and conversed with him." "As to her mental and physical condition at that time," he said, "she appeared in every way to be perfectly all right, except the fact that she was in a very advanced age—she appeared to understand and appreciate business matters that I discussed with her about her account and other things." Hinojosa told of an "attack of cerebral paralysis along the middle or early part of 1924"; but he said within a short time "she got all right"—"it is not true that after this attack she never got out of bed again except with the help * * * it is not a fact that she lost all or practically all memory after this attack." According to Hinojosa: His mother (i. e., Mrs. Zamora) "sent for Mr. Garcia for the reason that the City was after her to tear down * * * the buildings" (i. e., "wooden shacks") "that were on the property"; Garcia "arrived * * * and said 'What is it you want, Auntie?' she says 'I want to see you to sell that property.'" Garcia "replied 'Auntie, I have a whole lot of lots already.'" She "then replied that she was very much pressed and she had to sell because she had no means, and she said 'Now, son, you try and buy it from me, make an effort to buy it from me.'" Later, Garcia "took the deed to the house," and Mrs. Zamora signed it and acknowledged it before a "young lady" who was a "notary." Reyes told of a visit with Mrs. Zamora "a month or so prior to her death" (some two years or more after execution of the deed). He said "She talked with me intelligently while I was there; sure she knew me all right."

■ In favor of defendants in error, we assume that upon the whole of the relevant testimony an issue of capacity in its relation to fraud or an issue of fraud itself arose. Cf. Rankin v. Rankin, 105 Tex. 451, 151 S. W. 527. But enough of the testimony has been related above to demonstrate lack of warrant for a ruling, as a matter of law, that fraud itself or such a state of mind as to compel inference of fraud is established.

■ The purport of relevant averments is that Garcia knew a certain fact (i. e., lack of "power, intelligence or capacity to understand," etc.) and "took advantage of it" in "overreaching and persuading," and, thus, "defrauding," Carmen. Of course he did not have the knowledge and did not take that "advantage" if the "fact" did not exist. And it did not exist if "Mrs. Zamora understood the nature and effect of the conveyance." Thus, in the issue framed and tendered by him, Garcia presented a defense; his right to trial by jury included his right to have the issue determined by the jury. Fox v. Dallas Hotel Co., 111 Tex. 461, 475, 240 S. W. 517. We lay to one side the matter of submission of a question of law or the commingling of law and fact in the issue framed and submitted by the judge and consider that "issue" merely from the standpoint of a combination of "facts." Thus regarded, there is, we think, a joinder of the "fact" of mental state of Mrs. Zamora, the "fact" of knowledge thereof by Garcia, and the fact of his "taking advantage" of low mental state. Hence there was in the question as submitted forbidden "intermingling." Id.; K. C. M. & O. Ry. Co. v. Perry (Tex. Com. App.) 6 S.W.(2d) 111. And that vice in the charge would have been measurably avoided or cured by submission of the issue as requested by Garcia.

■ The authority of the trial judge and of the Court of Civil Appeals to supply findings of lack of "understanding of the nature and effect of the conveyance" was cut off by the request for submission of that issue to the jury. Article 2190, R. S. 1925.

Many other questions are presented in the assignments, but none of them may arise in the new trial. If any of them do arise, conditions affecting their right decision may be wholly different from those by which they are now circumstanced. Hence we pretermit discussion of them.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed, and that the cause be remanded.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.