Kelly L. WERTZ–BLACK, Charles H. Black, Michael Lee Wertz, Personal Representative of the Estate of Walter F. Wertz; Deceased, Richard Wertz, Tom Calder, and Bill Curry, Respondents,

v.

GUESA USA, LLC, Appellant.

WD 79103

Missouri Court of Appeals, Western District.

OPINION FILED: March 7, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2017

Thomas Kempton, Sedalia, MO, Susan Robertson, J. Zachary Bickel, Kansas City, MO, for Appellant.

James Buckley, Sedalia, MO, for Respondents.

Before Division One: James Edward Welsh, P.J., Anthony Rex Gabbert, and Edward R. Ardini, Jr., JJ.

James Edward Welsh, Presiding Judge

Guesa USA, LLC, ("Guesa") appeals the circuit court's judgment awarding the Respondents ("the Wertz Family") three prescriptive easements on commercial property owned by Guesa in Sedalia, Missouri. We affirm.

### Background

This case involves a dispute between the owners of two adjacent tracts of real property in Sedalia, Missouri. In November 2012, Guesa acquired title to a tract of commercial property at the corner of Highway 65 and 14th Street in Sedalia. The prior owners of that property had operated a Dairy Queen restaurant there for several decades prior to Guesa purchasing the property. The Wertz Family has owned the commercial property immediately to the south since 1947. The Wertz Family owns a building on that property out of which they operate their liquor store, State Fair Spirits.

The Guesa property is bordered by 14th Street on the north. Highway 65 borders both the Guesa and Wertz properties on the west. There is an entrance from Highway 65 onto the south side of the Wertz property. There is also an entrance from Highway 65 onto the Guesa property between the Wertz Family's liquor store and the Dairy Queen building. There is another entrance onto the Guesa property from 14th Street. Five parking spaces along the north side of the Wertz Family's building partially extend onto Guesa's property.

Prior to 1968, Highway 65 was a two-lane highway with no curbs, and the Guesa/Wertz property was "all one open area." After 1968, the highway was widened, and a curb was installed along the west boundary of the two properties with a thirty-foot entrance between them. That entrance is located entirely upon the south portion of the Guesa property. The curbing effectively cut off any vehicle access onto the north side of the Wertz property from Highway 65.

Until 2014, the Wertz Family, their tenants, and their customers routinely used Guesa's 14th Street and Highway 65 entrances for ingress and egress to the Wertz property and used the parking spaces on the north side of the Wertz property. In March 2014, however, Guesa blocked the entrances to its property from 14th Street and Highway 65, thereby restricting access to the Wertz Family property from those roadways.[1]

The Wertz Family thereafter filed a lawsuit seeking the declaration of three prescriptive easements. Specifically, the Wertz Family sought: (1) a 20–foot easement from 14th Street across Guesa's property to the Wertz property; (2) a 30–foot easement from Highway 65 across Guesa's property to the Wertz property; and (3) five parking spaces located on the south part of the Guesa property. The easement dimensions were determined by Kerry Turpin, a surveyor retained by the Wertz Family. Guesa filed its answer denying the Wertz Family's entitlement to the easements.

At the ensuing bench trial, the evidence showed that the Wertz property was originally purchased in 1947 by Walter Wertz

---

1. Guesa has since removed the barriers until this matter is resolved.

and his brother. In 1957, Walter Wertz and his wife, Maxine, acquired the brother's half-interest, giving them full ownership. In the 1940s, the Wertzes began operating a liquor store on their property. Their sons, Fred and Richard, grew up working in the family business. In 1979, Richard took over the store and has continuously operated it since. The Wertz Family has leased space in their building to a number of businesses over the years, including a surveyor's office, barber shop, and an insurance agency.[2]

For several decades, the prior owners of the Guesa property operated a Dairy Queen restaurant there. The Dairy Queen was initially owned and operated by Richard Johnson and his wife. They sold the property to Martin and Peterson, Inc., in 1974. Martin and Peterson, Inc., operated the Dairy Queen until 2012, when the property was sold to Guesa.

When they were children, Fred and Richard Wertz worked for Mr. Johnson at the Dairy Queen. Both Fred and Richard testified that they had never heard Johnson object either to the use of the Dairy Queen property for access to the Wertz property or to Wertz's customers using the parking spaces. Nor did they hear the subsequent owner, Mr. Martin, object to or complain about such uses. The only differences that arose occurred in 2012 when Martin showed Richard Wertz his plans to build a Dairy Queen Brazier, which would have closed the 14th Street entrance, and Richard objected. Richard told Martin that he was going to contact a lawyer about the matter, and Martin never pursued the project. On one other occasion, Martin objected to a sign on the north wall of the liquor store restricting parking to the Wertz's customers, and Richard removed the sign.

At trial, the plaintiffs presented the testimony of various members of the Wertz family and others, including a truck driver who had made deliveries to the liquor store from 1954 until 2012. All witnesses testified that, from the time that they were acquainted with the property up to the present, the owners, employees, and customers of the businesses on the Wertz property had continuously used either the Highway 65 or 14th Street entrances over Guesa's property for ingress and egress to those businesses. Guesa called no witnesses.

The circuit court entered Judgment in favor of the Wertz Family, declaring that the plaintiffs had *"non-exclusive easements"* (1) for ingress and egress for them and their customers "along and over the [20–foot] tract" from the 14th Street entrance;[3] (2) for ingress and egress for them and their customers "along and over the [30–foot] tract" from the Highway 65 entrance;[4] and (3) "for parking for the

---

**2.** Tom Calder and Bill Curry (who own businesses located in the Wertz Family's building) originally were plaintiffs in the case but were dismissed without prejudice prior to trial commencing.

**3.** The legal description of the 20–foot tract is:

A 20.0 FOOT WAY LYING 10.0 FEET EACH SIDE OF THE FOLLOWING DESCRIBED CENTERLINE: COMMENCING AT THE INTERSECTION OF THE SOUTH RIGHT–OF–WAY LINE OF 14TH STREET AND THE EAST RIGHT–OF–WAY LINE OF LIMIT AVENUE (U.S. ROUTE 65), THENCE EAST ALONG SAID SOUTH RIGHT–OF–WAY LINE, 106.0 FEET TO THE POINT OF BEGINNING; THENCE LEAVING SAID SOUTH RIGHT–OF–WAY LINE, SOUTH 00°57'30" EAST, PARALLEL WITH THE EAST RIGHT–OF–WAY LINE OF SAID LIMIT AVENUE (U.S. ROUTE 65), 90.0 FEET TO A POINT ON THE NORTH LINE OF A TRACT DESCRIBED IN BOOK 437 PAGE 450 AND THE TERMINATION OF SAID 20 FOOT WAY.

**4.** The legal description of the 30–foot tract is:

A 30.0 FOOT WAY LYING 150.0 FEET EACH SIDE OF THE FOLLOWING DE-

benefit of plaintiffs and their customers on [Guesa]'s property on the [parking] tract." [5] The court ordered the cost of repairs and maintenance of the easements to be divided between the parties and enjoined Guesa from depriving the Wertz Family from using the above described ways and parking spaces.

## Discussion

Guesa raises two points on appeal. It claims that the circuit court erred in awarding the prescriptive easements: (Point I) because the court "misapplied the law," in that there was no evidence that Wertz's use was adverse or exclusive under an individual claim of right, and (Point II) because the judgment lacks substantial evidence to support it. Both points claim, in essence, that there was insufficient evidence to support the declaration of prescriptive easements.

■ Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), under which we will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.

*Daniels–Kerr v. Crosby*, 484 S.W.3d 798, 801 (Mo. App. 2016). "[W]e defer to the factual findings of the trial judge, who is in a superior position to assess credibility, and we consider the evidence in the light most favorable to the trial court's decision." *Custom Muffler & Shocks, Inc. v. Gordon P'ship*, 3 S.W.3d 811, 817 (Mo. App. 1999). In reviewing a court-tried case to determine whether the judgment is supported by sufficient evidence, we must act with caution and will reverse only upon a firm belief that the judgment is wrong. *Id.* at 815.

■ To establish a prescriptive easement, the use of the property must be open, visible, continuous, uninterrupted, and adverse for a period of ten years. *Whittom v. Alexander–Richardson P'ship*, 851 S.W.2d 504, 508 (Mo. banc 1993). "Whether the use of the land establishes a prescriptive easement is a fact question to be inferred from the circumstances and the nature and character of the use." *Id.*

■ Here, the circuit court found that the Wertz Family's use of Guesa's property has been open, visible, continuous, uninterrupted, and adverse for a period of

SCRIBED CENTERLINE: COMMENCING AT THE INTERSECTION OF THE SOUTH RIGHT–OF–WAY LINE OF 14TH STREET AND THE EAST RIGHT–OF–WAY LINE OF LIMIT AVENUE (U.S. ROUTE 65), THENCE SOUTH 00°57'30" EAST, ALONG SAID EAST RIGHT–OF–WAY LINE, 64.0 FEET TO HIGHWAY CENTERLINE STATION 90+62; THENCE LEAVING SAID EAST RIGHT–OF–WAY, SOUTH 89°39'51" EAST, PARALLEL WITH THE NORTH LINE OF A TRACT DESCRIBED IN BOOK 437 PAGE 450, 106.0 FEET TO THE TERMINATION OF SAID 30 FOOT WAY.

5.  The legal description of the parking tract is: COMMENCING AT THE INTERSECTION OF THE SOUTH RIGHT–OF–WAY LINE OF 14TH STREET AND THE EAST RIGHT–OF–WAY LINE OF LIMIT AVENUE (U.S. ROUTE 65), THENCE SOUTH

00°57'30" EAST ALONG SAID EAST RIGHT–OF–WAY LINE, 79.0 FEET TO A POINT 15.0 FEET NORTH OF THE NORTHWEST CORNER OF A TRACT DESCRIBED IN BOOK 437 PAGE 450 AND THE POINT OF BEGINNING; THENCE LEAVING SAID EAST RIGHT–OF–WAY LINE, SOUTH 89°39'51" EAST PARALLEL WITH THE NORTHLINE OF SAID TRACT, 96.0 FEET; THENCE SOUTH 00°57'30" EAST, 11.0 FEET TO THE NORTH LINE OF SAID TRACT; THENCE NORTH 89°39'51" WEST, ALONG SAID NORTH LINE, 96.0 FEET TO THE EAST RIGHT–OF–WAY LINE OF SAID LIMIT AVENUE (U.S. ROUTE 65); THENCE NORTH 00°57'30" WEST, ALONG SAID RIGHT–OF–WAY 11.0 FEET TO THE POINT OF BEGINNING.

more than fifty years. Specifically, the court found that the Wertz Family's use of Guesa's premises for ingress and egress, as well as for parking,

> was continuous from the 1950s to the present on a daily basis for at least six (6) days a week. No one objected to the uses being made of Guesa's premises for the purposes stated at any time. Such use being made by plaintiff of Guesa's premises for the uses stated was clearly openly visible at all times and in clear view of the owner and operators of the Dairy Queen business.

The court concluded, therefore, that "such uses ... have been continuous and uninterrupted for more than ten years prior to the filing of the suit ... and have been open, notorious and adverse to [Guesa]'s interest in the real estate." The courts findings are supported by substantial evidence.

Both Fred and Richard Wertz testified that, in the 1950s and '60s, when they were children, they routinely saw customers cross over the Dairy Queen tract from both the Highway 65 and 14th Street entrances to access (and leave) the liquor store. Fred testified that customers of the liquor store and other businesses in the Wertz building accessed those businesses on a daily basis from both entrances from 1947 to the present. He also stated that they had used the parking lot on the north side of the liquor store for as long as he could remember.

Richard Wertz, who operates the liquor store, testified that he saw customers of his store and the other tenants consistently use the 14th Street and Highway 65 entrances across the Guesa property, as did the tenants and their employees. Richard stated that the parking spaces along the north side of the liquor store have routinely been used by customers of those businesses and that some of his employees

also park there. Richard also told the court that he has maintained and paid for striping of the parking spots on his own.

Kelly Wertz–Black (Richard's daughter) testified that, for as long as she has worked at the liquor store (the past 16 years), the public has driven over the Guesa property from both 14th Street and Highway 65 as a cut through to the Wertz property. Both Kelly and another witness, Josh Basham, testified that they had monitored the customers' ingress and egress on different occasions. Both found that the vast majority of the customers used either the 14th Street entrance or the Highway 65 entrances which traversed over Guesa's property.

Rueben Twenter, who delivered to State Fair Spirits from 1954–2012 testified that he saw the general public use both accesses across the Guesa property and assumed it was "okay" to cut across the Guesa property to get to the liquor store. Joe Beykirch, who now delivers product to the store, testified that it was necessary to use either the 14th Street or Highway 65 entrance or exit depending upon the direction of travel because it was impossible to get a large delivery truck turned around to exit the property from the point of entrance. Both Twenter and Beykirch testified that they had seen customers of all of the Wertz building businesses use those entrances to cross the Dairy Queen property on a regular basis.

Kerry Turpin testified that, between 1977 and 1980, the surveyor he worked for had offices in the building owned by the Wertz Family. Turpin testified that it was common for the public to use those entrances in order to do business on the Wertz property. Charles Van Dyne testified that in the late '50s and early '60s he would enter the Dairy Queen property from either 14th Street or Highway 65 in

order to make purchases at the Wertz liquor store.

In sum, all of the witnesses testified that the Wertz Family and their tenants, customers, and delivery drivers, used the entrances from Highway 65 and 14th Street on Guesa's property to access and depart the Wertz property on a regular, daily basis, and such use was constant from the late 1950s to the present. The witnesses also testified that the parking spaces on the north side of the liquor store were used in the same manner by customers of the businesses on the Wertz property. This constituted sufficient evidence to support the circuit court's finding that use of Guesa's property for ingress and egress from 14th Street and Highway 65 to the businesses in the Wertz building and for parking was open, visible, continuous, uninterrupted, and adverse for a period of at least fifty years.

Guesa alleges, nevertheless, that the Wertz Family failed to prove the element of adversity. In the context of prescriptive easements, for the use to be "adverse" it is not necessary that the user intend to violate the owner's rights; rather, "it is necessary only for the use to proceed without recognition of the owner's authority to permit or prohibit the use." *Whittom*, 851 S.W.2d at 508. Moreover, the adverse use need not be exclusive. *Id.* "The claimant of an easement claims only the right to make certain use of the land and does not claim to possess the whole title and exclude the owner from it for all purposes." *Id.* It is sufficient that the person who has purportedly established the easement acts in a manner such as to show clearly that he claims a nonexclusive right to use the property. *Id.* at 508–09.

Here, the Wertz Family clearly acted in such a manner. They openly and consistently demonstrated their non-recognition of a need to seek permission to use the property for access and parking. Richard Wertz objected to Martin's plans to enlarge the Dairy Queen because it would deny access to his store from 14th Street, and Martin acquiesced. Richard also maintained the parking lot without seeking permission from the Guesa owners. All of this evidence would support a finding that the Wertz Family's use was adverse and under a claim of right.

In any event, as our Supreme Court has explained, "the element of adversity is commonly inferred, rather than directly proved." *Id.* at 509. "Proof that a particular use of another's land has in fact occurred normally justifies a finding that the use has been adverse." *Id.* The "law presumes that every man knows the condition and status of his land"; thus, if the owner does not timely seek legal aid to dispossess one who "enters into possession and sets up an adverse claim" to the land, "the law assumes that the owner has acquiesced in the adverse claim." *Id.* Consequently, where there has been a long and continuous use of that property, there is a presumption in favor of the party asserting a prescriptive easement that its use of the property is adverse and under a claim of right. *Custom Muffler*, 3 S.W.3d at 816. The presumption places the burden on the landowner to demonstrate that the use was permissive and not adverse. *Id.*

As previously stated, substantial evidence in this case established that there "has been a long and continuous use" of the property by the Wertz Family; thus, the presumption arises in favor of the Wertz Family that "its use of the property is adverse and under a claim or right." Guesa presented no evidence to rebut this presumption.

Instead, Guesa argues that Wertz's use of its property was not adverse because Wertz, their customers and distributors,

customers of other businesses, and **members of the general public** traveled over the Guesa property and parked on the Guesa property "in the same manner for decades" and "they all believed the use was permitted because they thought it was a public way, public cut through or common property." Guesa claims that certain testimony to that effect "destroys" the claim for a private prescriptive easement.[6]

In support, Guesa relies on *Rosemann v. Adams*, 398 S.W.2d 855, 858 (Mo. 1966), and cases that cite *Rosemann*—e.g., *Shapiro Bros., Inc. v. Jones–Festus Prop., L.L.C.*, 205 S.W.3d 270, 279–80 (Mo. App. 2006), and *Custom Muffler*, 3 S.W.3d at 814–15—for the proposition that no claim of individual right of easement by prescription may arise under circumstances where the disputed area is a public way. In *Rosemann*, the claim for a private easement was denied because the claimant stated that he "figured" the area in question "was *a street belonging to the Village*." 398 S.W.2d at 858. Thus, his use was found not to be adverse because *he believed* he was actually using a city street, not private property, and he could not claim an easement for personal use adverse to the rights of other members of the public that he acknowledged. *See id.*

Here, on the other hand, none of the Wertz plaintiffs testified that they *believed* the disputed property was a public roadway. Nothing in the evidence indicates that the Wertzes' use of the term "public way" meant that they believed the easements they sought were on public property. The 14th Street and Highway 65 entrances over the Guesa property were a "public way" only in the sense that the public, like all the witnesses, used the entrances to access the businesses in the Wertz building. That does not "destroy" a claim for prescriptive easement. *See Cramer v. Jenkins*, 399 S.W.2d 15, 18–19 (Mo. 1966) (citing *Sanford v. Kern*, 223 Mo. 616, 122 S.W. 1051, 1055 (1909) (prescriptive easement established where the property was "used continuously by [plaintiff], his tenants, *and those having business on his land as his means of egress and ingress*" for the requisite number of years) (emphasis added)).

In *Cramer*, as in this case, the disputed roadway "was in a well-defined location, continuously used by plaintiff as his means of ingress and egress [for several decades]," and defendant neither said anything about it nor made any objection to it until 1954 when defendant, after having seen plaintiff use it over this period, decided it would be more convenient to him to plow over it. *Id.* The *Cramer* Court held that "the evidence warranted a finding of an easement by prescription ... for ingress and egress to his land over this roadway." *Id.* at 19.

Here, there was substantial evidence that the Wertz Family's use of Guesa's property for ingress and egress and for parking has been open, visible, continuous, uninterrupted, and adverse for a period of more than fifty years. Despite Guesa's claim that the evidence was insufficient to establish adversity, the Wertz Family's "long and continuous use" of the property for decades created a presumption that the use was adverse, and Guesa failed to rebut that presumption. Thus, the circuit court

---

6. Guesa points to: (1) Fred Wertz's testimony that the general public used access across the Guesa property as a "cut through" or a "public way"; (2) Richard Wertz's testimony that access from the highway was used as a "public way," that the general public used the access from 14th Street and travelled across the Dairy Queen lot, and that anyone at the Sedalia State Fair could park in the disputed parking spots; and (3) Kelly Wertz–Black's testimony that the general public has driven over the Guesa property as a "cut through" and as a public way.

did not err in entering judgment in favor of the Wertz Family and declaring that they had three "non-exclusive easements" on and over the Guesa property.

For the foregoing reasons, we affirm the circuit court's judgment.

All concur.