

# In the Missouri Court of Appeals
# Eastern District

## NORTHERN DIVISION

| | | |
|---|---|---|
| KEITH W. LAY, ET UX. | ) | No. ED111508 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court of |
| | ) | Knox County |
| vs. | ) | |
| | ) | Honorable Corey R. Moon |
| SALLIE CUNNINGHAM, ET AL., | ) | |
| | ) | |
| Appellants. | ) | Filed: April 16, 2024 |

### Introduction

Curt and Sallie Cunningham ("Curt" or collectively, "the Cunninghams"), successor trustees of the Joseph E. Cunningham and Judith Ann Cunningham Trust dated June 28, 2007, appeal the circuit court's judgment granting Keith and Wanda Lay ("Keith" or collectively, "the Lays") a prescriptive easement for ingress and egress, thirty feet in width, across property owned by the Cunninghams (the "Cunningham Property"), and injunctive relief.[1] The Cunninghams raise six points on appeal. In Point I, the Cunninghams argue the circuit court erred in granting a prescriptive easement because there was no substantial evidence supporting adverse use by the Lays for a continuous period of ten years. In Point II, the Cunninghams argue the circuit court erred in granting a prescriptive easement because the finding of adverse use by the Lays for a continuous period of ten years was against the weight of the evidence. In Point III, the

---

[1] Because several parties share the same last name, this Court will refer to the individuals by their first name for the sake of clarity. This Court intends no disrespect or familiarity.

Cunninghams argue the circuit court erred in granting a prescriptive easement because it misapplied the law when it determined the Cunninghams failed to rebut the presumption of adverse use. In Point IV, the Cunninghams argue the circuit court erred in granting the Lays a thirty-foot-wide easement because there was no substantial evidence to support a thirty-foot-wide easement. In Point V, the Cunninghams argue the circuit court erred in granting the Lays a thirty-foot-wide easement for ingress and egress because there was no substantial evidence to support a thirty-foot-wide easement for ingress and egress. In Point VI, the Cunninghams argue the circuit court erred in granting the Lays injunctive relief because such relief was not supported by the pleadings or facts tried by consent given the Lays did not seek this relief in their pleadings or at trial.

Because the circuit court properly applied the law when it placed the burden on the Cunninghams to demonstrate the Lays' use was permissive and not adverse, Point III is denied. Because the circuit court's judgment finding the Lays' use of the Cunningham Property adverse for a continuous period of ten years is supported by substantial evidence and is not against the weight of the evidence, Points I and II are denied. Because the evidence supports the judgment granting a thirty-foot-wide prescriptive easement, Points IV and V are denied. Because the injunctive language in the judgment is unnecessary and this Court may modify a challenged judgment by deleting portions of it under Rule 84.14,[2] Point VI is granted to the extent the judgment is modified.

The circuit court's judgment is affirmed as modified.

**Factual and Procedural Background**

The Lays purchased property in Knox County, Missouri (the "Lay Property"), in 1972. The Lay Property is 436 acres, approximately one half-mile wide, and approximately one mile and a

---

[2] All Rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

half long. Troublesome Creek runs through the bottom part of the Lay Property limiting access to the southern portion from the northern portion. When the Lays acquired the Lay Property, part of the property south of Troublesome Creek was adjacent to property owned by Selbourne and Syddny Skirvin (the "Skirvin Property"). Sweet Oak Avenue runs west of the Skirvin Property. After the Lays purchased their property, Selbourne showed Keith how to access the Lay Property south of Troublesome Creek via the Skirvin Property. This access ran generally in an east/west direction from Sweet Oak Avenue on the west side of the Skirvin Property along the top of a long terrace to the west side of the Lay Property. The Lays used the access from Sweet Oak Avenue to farm the southern part of their property. The Lays also used the access to cut timber and hunt. From 1972 forward, the Lays helped maintain the thirty-foot-wide area across the terrace.

In 1999, Joseph and Judith Cunningham purchased the Skirvin Property where their children, Curt and Sallie, occasionally assisted in managing the farm. The Lays continued to use the Cunningham Property to access their property. The Lays never spoke with Joseph or Judith about permission to use the Cunningham Property to access the Lay Property. After Joseph and Judith passed away, the Cunningham Property passed to Curt and Sallie in 2017. The Lays continued to use the Cunningham Property to access their property until 2019, when Curt and Keith spoke about Keith mowing the terrace across the Cunningham Property. Curt told Keith he could not mow or use the access, but Keith stated he had an easement across the Cunningham Property. Curt disagreed the easement existed because there was no record of it filed at the courthouse.

The Lays sued the Cunninghams, seeking to establish a prescriptive easement across the Cunningham Property. The circuit court held a bench trial in which Keith, Keith's neighbor, two of Keith's cousins, a son of a former Skirvin employee, Keith's friend, and Curt testified.

3

Following the bench trial, the circuit court granted the Lays the prescriptive easement. The Cunninghams moved for a new trial, to set aside the judgment, and/or to amend the judgment. Following a hearing on the motion, the circuit court sustained the motion in part "to receive evidence on the legal description of the easement by prescription." The circuit court ordered the Lays to obtain a survey of the easement. Following a hearing on the survey, the circuit court entered the amended judgment and order, with the survey attached, granting the prescriptive easement. This appeal follows.

**Standard of Review**

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198–99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

**Discussion**

This Court will first address Point III separately, then Points I and II together, Points IV and V together, and finally, Point VI separately.

Point III: Misapplication of Law as to Burdens

*A. Standard of Review*

Where a misapplication of law is asserted, this Court's review is *de novo*. *Sharma v. Glob. Inv. Grp., LLC*, 681 S.W.3d 282, 286 (Mo. App. E.D. 2023) (quoting *Golf Club of Wentzville Cmty. Homeowners Ass'n v. Real Homes, Inc.*, 616 S.W.3d 339, 342 (Mo. App. E.D. 2020)).

*B. Party Positions*

In Point III, the Cunninghams argue the circuit court erred in granting a prescriptive easement because it misapplied the law when it determined the Cunninghams failed to rebut the

4

presumption of adverse use related to the Lays' use of the Cunningham Property for access to the Lay Property after 1999. The Cunninghams contend the circuit court implicitly determined any permission to use the Cunningham Property, granted by Selbourne, did not survive the conveyance of the Cunningham Property in 1999 to the Cunninghams. The Cunninghams argue the circuit court incorrectly placed the burden to prove permissive use on them when the burden remained on the Lays to show the permissive use became adverse for a period of ten continuous years.

The Lays argue the circuit court did not err in granting a prescriptive easement because it correctly applied the law when it determined the Cunninghams failed to rebut the presumption of adverse use related to the Lays' use of the Cunningham Property for access to their own property after 1999. The Lays contend the circuit court correctly placed the burden to prove permissive use on the Cunninghams.

*C. Analysis*

"For their claim of a prescriptive easement, plaintiffs must prove that their use was continuous, uninterrupted, visible and adverse for a period of ten years." *Hirsch v. Ebinger*, 334 S.W.3d 695, 698 (Mo. App. E.D. 2011). "Plaintiffs bear the burden of proving by clear and convincing evidence the required elements for a prescriptive easement." *Id.* "Missouri law disfavors the creation of prescriptive easements." *Id.* Here, the parties dispute adverse use for a continuous period of ten years.

"In the context of prescriptive easements, for the use to be 'adverse' it is not necessary that the user intend to violate the owner's rights; rather, 'it is necessary only for the use to proceed without recognition of the owner's authority to permit or prohibit the use.'" *Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 785 (Mo. App. W.D. 2019) (quoting *Wertz-Black v. Guesa USA, LLC*, 524 S.W.3d 68, 74 (Mo. App. W.D. 2017)). For prescriptive easements,

"satisfaction of the prerequisite for adversity is commonly inferred, rather than directly proved." *Id.* (quoting *Whittom v. Alexander-Richardson P'ship*, 851 S.W.2d 504, 509 (Mo. banc 1993)). "Proof that a particular use of another's land has in fact occurred normally justifies a finding that the use has been adverse." *Id.* (quoting *Whittom*, 851 S.W.2d at 509). Accordingly, "where there has been a long and continuous use of that property, there is a presumption in favor of the party asserting a prescriptive easement that its use of the property is adverse and under a claim of right." *Id.* (quoting *Wertz-Black*, 524 S.W.3d at 74). But such a "presumption does not arise when a showing is made that the use was permissive in origin." *Blue Pool Farms, LLC v. Basler*, 239 S.W.3d 687, 691 (Mo. App. E.D. 2007). "Where a use originates with permission, it remains permissive 'unless and until there is a positive assertion of a right hostile to that of the owner which is made known to him.'" *Leonard v. Robinson*, 276 S.W.3d 868, 874 (Mo. App. E.D. 2009) (quoting *Harmon v. Hamilton*, 903 S.W.2d 610, 613 (Mo. App. S.D. 1995)); *see also Carpenter-Union Hills Cemetery Ass'n v. Camp Zoe, Inc.*, 547 S.W.2d 196, 200 (Mo. App. 1977). "The matter of whether use was with permission is a matter involving the credibility of witnesses which should be resolved by the trier of fact." *Leonard*, 276 S.W.3d at 874 (quoting *Harmon*, 903 S.W.2d at 613). And this Court "must 'defer to the [circuit] court's credibility determinations, explicit or implicit . . . .'" *Sharma*, 681 S.W.3d at 286 (quoting *Tribus, LLC v. Greater Metro, Inc.*, 589 S.W.3d 679, 692 (Mo. App. E.D. 2019)). "[A]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *Ivie*, 439 S.W.3d at 200 (quoting Rule 73.01(c)).

Here, the circuit court implicitly found the Lays' use of the Cunningham Property was *not* permissive in origin. The Cunninghams argue this Court should not defer to the circuit court's findings because it was an uncontested fact the Lays' use of the Cunningham Property was

6

permissive in origin. The Cunninghams are correct, "[w]hen evidence is uncontested, no deference is given to the [circuit] court's findings." *Ridgway v. Dir. of Revenue*, 573 S.W.3d 129, 133 (Mo. App. E.D. 2019) (emphasis removed). But, "[w]hen the facts relevant to an issue are contested, the reviewing court defers to the [circuit] court's assessment of the evidence." *Id.* "A party may contest evidence by: putting forth evidence to the contrary; cross-examination; pointing out internal inconsistencies in the evidence; or arguing credibility as apparent from the witness's demeanor, bias, or incentive to lie." *Id.*

The Lays contested the fact their use of the Cunningham Property was permissive in origin. In response to a question about the terrace, Keith testified:

> The one I'm wanting to -- the one that I have the right-of-way to -- the right-of-way to the back of my farm, and [Selbourne] said this is the way you access the back part of the farm. And he says you have permission to drive across here, but he says I cannot stop you if you want to drive across -- or if I want to, is what he said, and he said there was a lot of agreements made when they straightened the creek. And I assumed that was one of the agreements and I never questioned it any beyond that.

When asked whether he ever sought Joseph's permission to cross the Cunningham Property, Keith stated "No." When asked why he did not seek permission, Keith responded, "Because I had the right to go the way I understood it, yes." In response to the question if he ever asked for permission from anyone to access his property via the terrace from 1972 until his conversation with Curt in 2019, Keith stated, "No, I never did." On cross-examination, Keith further testified:

> Q: Okay. And it was [Selbourne] who gave you permission when you bought your property to go across his land to go to your property along this right-of-way of sorts; is that correct?
>
> A: He took me back there and he showed me, and he said you have permission to drive across.
>
> Q: You have –
>
> A: But I can't stop you.

Q: But you have permission to go across this property?

A: Yes. Yes, that's what he said.

. . .

Q: And what I understand from your testimony is that [Selbourne] gave you permission to drive across his land to access your land on the south end; is that correct?

A: He said that, yes. And he said I had a right to, also.

Keith continued to testify Selbourne told him he had the right to cross the Skirvin Property:

Q: Okay. Well, I -- I don't understand -- I don't understand what [Selbourne] was referring to, but your -- my understanding is that [Selbourne] gave you permission, in -- in -- in 1972 to go across this property.

A: That's what he said.

Q: Okay.

A: He also said that I had the right to whether he gave me permission or not.

Additionally, in describing his conversation with Keith about continuing to mow the terrace, Curt testified:

Q: What did [Keith] say to you?

A: He said something to the effect that he's always gone through there. And I said well, you're not going to go through there anymore, and then he said –

Q: Did he indicate to you that he had permission to go through there?

A: He said he had an easement to go through there. . . .

Only after being asked again by his attorney about Keith telling him whether he had permission to go across the property did Curt reply, "I think he said something about [Selbourne] had given him permission."

The record reflects the issue of whether the Lays' use of the Cunningham Property was permissive in origin was contested because both Keith and Curt testified Keith indicated he had

8

permission and a right to use the property. As a result, the circuit court was charged with deciding whether the use was permissive in origin. Even though there is no specific finding on this question in the circuit court's judgment, "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *Ivie*, 439 S.W.3d at 200 (quoting Rule 73.01(c)). And "[w]hen evidence is contested by disputing a fact in any manner, this Court 'gives due regard to the opportunity of the [circuit] court to have judged the credibility of witnesses.'" *Ridgway*, 573 S.W.3d at 133 (quoting *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002)). Thus, this Court defers to the circuit court's implicit finding the Lays' use of the Cunningham Property was not permissive in origin. *Leonard*, 276 S.W.3d at 874; *Sharma*, 681 S.W.3d at 286.

Because the Lays' use was not permissive in origin and "there has been a long and continuous use of that property, there is a presumption in favor of the party asserting a prescriptive easement that its use of the property is adverse and under a claim of right." *Southside Ventures*, 574 S.W.3d at 785 (quoting *Wertz-Black*, 524 S.W.3d at 74). "The presumption places the burden on the landowner to demonstrate that the use was permissive and not adverse." *Id.* (quoting *Wertz-Black*, 524 S.W.3d at 74). Therefore, the circuit court properly applied the law when it placed the burden on the Cunninghams to demonstrate the Lays' use was permissive and not adverse. *Id.*

Point III is denied.

Points I & II: Evidentiary Challenges as to Adverse Use

*A. Standard of Review*

"Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Peoples Nat'l Bank, N.A. v. Fish*, 600 S.W.3d 273, 278 (Mo. App. E.D. 2020). "Evidence has probative force if it has any tendency to

make a material fact more or less likely." *Ivie*, 439 S.W.3d at 199. "When considering whether a judgment is supported by substantial evidence, appellate courts must view the evidence in the light most favorable to the [circuit] court's judgment, defer to the [circuit] court's credibility determinations, and accept as true the evidence and inferences favorable to the judgment while disregarding contrary evidence." *Holm v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590, 596 (Mo. banc 2017). "[N]o contrary evidence need be considered on a substantial-evidence challenge, regardless of whether the burden of proof at trial was proof by a 'preponderance of the evidence' or proof by 'clear, cogent, and convincing evidence.'" *Ivie*, 439 S.W.3d at 200. "Circuit courts are free to believe any, all, or none of the evidence presented at trial." *Id.* "[A]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *Id.* (quoting Rule 73.01(c)).

Where an against the weight of evidence claim is asserted, this Court "must 'defer to the [circuit] court's credibility determinations, explicit or implicit,' and can reverse 'only when we firmly believe the judgment is wrong.'" *Sharma*, 681 S.W.3d at 286 (quoting *Tribus, LLC*, 589 S.W.3d at 692). This Court defers to the circuit court's factual findings, as the circuit court is in a superior position to assess credibility, and acknowledge the circuit court "is free to believe none, part, or all of any witness's testimony." *Id.* (quoting *Tribus, LLC*, 589 S.W.3d at 692). "An against-the-weight-of-the-evidence challenge accepts there is substantial evidence supporting a proposition necessary to sustain the judgment, 'but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact.'" *Id.* (quoting *Tribus, LLC*, 589 S.W.3d at 692). "The evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the

[circuit] court's judgment, and all contrary evidence and inferences must be disregarded." *Id.* (quoting *Tribus, LLC*, 589 S.W.3d at 692).

### B. Party Positions

In Point I, the Cunninghams argue the circuit court erred in granting a prescriptive easement because there was no substantial evidence supporting adverse use by the Lays for a continuous period of ten years. The Cunninghams argue the uncontested evidence at trial demonstrated the Lays' use of the access across the Cunningham Property was permissive from its inception, and the evidence presented did not establish the permissive use became adverse for a period of ten continuous years.

In Point II, the Cunninghams argue the circuit court erred in granting a prescriptive easement because the finding of adverse use by the Lays for a continuous period of ten years was against the weight of the evidence. The Cunninghams argue the evidence at trial established the Lays' use of the access across the Cunningham property was permissive from its inception. The Cunninghams thus contend the presumption of adverse use was defeated and adverse use for the requisite period was not established.

The Lays argue the circuit court did not err in granting a prescriptive easement because there was substantial evidence supporting their adverse use for a continuous period of ten years. The Lays contend even if their use of access across the Cunningham Property while the Skirvins owned it was permissive, the evidence was undisputed from the time the Cunninghams owned the property in 1999 until 2019, the Lays' use of the access across the Cunningham Property was adverse for a period of ten continuous years. The Lays argue there is no suggestion they sought permission from the Cunninghams nor that the Cunninghams gave them permission to use the Cunningham Property.

11

*C. Analysis*

As previously discussed, this Court defers to the circuit court's finding the Lays' use of the access across the Cunningham Property was not permissive in origin. Thus, the Cunninghams bear the burden to demonstrate the Lays' use was permissive and not adverse. *Southside Ventures*, 574 S.W.3d at 785. "Whether the use of the land establishes a prescriptive easement is a fact question to be inferred from the circumstances and the nature and character of the use." *Id.* (quoting *Wertz-Black*, 524 S.W.3d at 72). This Court "defer[s] to the factual findings of the [circuit] judge, who is in a superior position to assess credibility." *Id.* (quoting *Wertz-Black*, 524 S.W.3d at 72).

The circuit court concluded the Cunninghams' evidence was "insufficient to rebut the presumption [the] Lay[s]' use of the Cunningham [P]roperty was adverse instead of permissive." "If the defendants did not interfere with plaintiffs' use, and if plaintiffs' use of the roadway was in a manner clearly indicating that plaintiffs claimed a nonexclusive right to use the property without the need to obtain defendants' permission, then the requirement for adversity would be satisfied." *Id.* (quoting *Whittom*, 851 S.W.2d at 509). The circuit court found: "Keith Lay used the access from Sweet Oak Avenue to his real estate by traversing a path, including over a terrace, across [the Cunninghams' Property]"; the Lays "cut timber, hunted, and helped to maintain the [thirty]-foot-wide area upon which the easement runs"; the Lays also gave permission to others to use the land; the Lays never sought permission from Joseph or Judith to use the land, inferring the Lays never believed permission was necessary to use the Cunningham Property to access their land or to maintain such access; and Joseph saw Keith use the Cunningham Property on several occasions. Given this Court's standard of review, there was substantial evidence presented for the circuit court to find the Lays' use of the Cunningham Property was adverse from 1999 to 2019. *See Hirsch*, 334 S.W.3d at 699.

The circuit court's judgment is supported by substantial evidence and is not against the weight of the evidence.

Points I and II are denied.

### Points IV and V: Scope of Prescriptive Easement

*A. Standard of Review*

This Court is governed by the standard of review in Point I.

*B. Party Positions*

In Point IV, the Cunninghams argue the circuit court erred in granting the Lays a thirty-foot-wide easement because there was no substantial evidence presented at trial to support a thirty-foot-wide easement. The Cunninghams contend Keith's testimony established the terrace used for access was only ten to twelve feet wide, and the thirty feet testified to was only as to the width the Lays infrequently mowed over an indeterminate period.

In Point V, the Cunninghams argue the circuit court erred in granting the Lays a thirty-foot-wide easement for ingress and egress because there was no substantial evidence presented at trial to support such an easement. The Cunninghams argue Keith's testimony established the terrace used for access was only ten to twelve feet wide, and the thirty feet testified to was only the width the Lays mowed. The Lays argue the circuit court did not err in granting them a thirty-foot-wide easement because the evidence presented at trial supported a thirty-foot-wide easement for ingress and egress.

*C. Analysis*

"The character and extent of a prescriptive easement is determined by the character and extent of use during the prescriptive period." *Tadlock v. Otterbine*, 767 S.W.2d 366, 368 (Mo. App. S.D. 1989); *see also Stickle v. Link*, 511 S.W.2d 848, 854 (Mo. 1974); *Meyer v. Pierce*, 753

13

S.W.2d 79, 80 (Mo. App. E.D. 1988). Here, the evidence supports the circuit court's judgment granting a thirty-foot-wide prescriptive easement. Keith repeatedly testified the access point at Sweet Oak Avenue was thirty feet wide, the gate bordering his property was thirty feet wide, the terrace he maintained and mowed was thirty feet wide, and the width he used for access of farm machinery was thirty feet wide.[3] For example, Keith testified:

Q: Okay. When -- when you were mowing the -- what you're asking to be declared a -- an easement, approximately how wide an area did you mow?

A: I mowed the terrace; it was probably around 30 feet, yes.

Q: And any other maintenance that -- that you provided, such as the -- the rock that you put on, did -- what was the width of -- of that?

A: That's probably around that width, yes. Wide enough you could drive through it with equipment.

Q: Okay. And that's the -- the width of the easement that you're asking the Court to prescribe for you; is that correct?

A: Yes, it is.

Additionally, Keith testified:

Q: . . . And why . . . are you seeking an easement of that width?

A: To make sure I can get through it without the brush and different crops and different things crowding me too much.

Q: Okay. So even though whatever vehicle or tractor or implement you might be driving across there, the -- the wheel frame of those, if you will, wouldn't be 30 feet wide, but there may be -- some of that equipment would be 30 feet in width that would need that area clear from trees and brush --

A: Yes.

Q: -- to be able to access; is that correct?

A: Well, yes, and if you let the brush crowd you, the next thing you know you can't get down it with anything. You just keep it mowed away.

---

[3] Other witnesses similarly testified. For example, Keith's friend testified he baled hay on the southern portion of the Lay Property and used the Cunningham Property to access the property with the farming equipment.

Thus, given this Court's standard of review, the circuit court could have found the prescriptive easement was thirty feet wide. *See Hirsch*, 334 S.W.3d at 699; *see also Moss v. Ward*, 881 S.W.2d 238, 243 (Mo. App. S.D. 1994).

Points IV and V are denied.

## Point VI: Injunctive Relief

### A. Standard of Review

"It is well established that the 'powers of a court of equity to adjudicate are broad but are limited to the claim for relief and issues made by the pleadings.'" *City of Greenwood v. Martin Marietta Materials, Inc.*, 311 S.W.3d 258, 264 (Mo. App. W.D. 2010) (quoting *Blando v. Reid*, 886 S.W.2d 60, 67 (Mo. App. W.D. 1994)) (emphasis removed). "To the extent that [a] judgment goes beyond the pleadings, it is void." *Id.* (quoting *Residential & Resort Assocs., Inc. v. Wolfe*, 274 S.W.3d 566, 569 (Mo. App. W.D. 2009)). "[W]hether a judgment should be vacated as void is a question of law [this Court] review[s] *de novo*, giving no deference to the [circuit] court's determination." *Forsyth Fin. Grp., LLC v. Hayes*, 351 S.W.3d 738, 740 (Mo. App. W.D. 2011).

### B. Party Positions

In Point VI, the Cunninghams argue the circuit court erred in granting the Lays injunctive relief because such relief was not supported by the pleadings or facts tried by consent given the Lays did not seek such relief in their pleadings or at trial. The Lays argue the circuit court did not err in granting injunctive relief because they were entitled to a prescriptive easement as a matter of law based on the evidence presented at trial. Thus, the Lays contend the circuit court was within the bounds of the prayer for relief in their petition.

15

*C. Analysis*

A circuit court "has the authority to grant relief only if: (1) the relief is requested, and (2) issues are raised that support the granting of such relief." *City of Greenwood*, 311 S.W.3d at 264. Here, beyond granting the prescriptive easement, the circuit court's amended judgment and order stated:

> The Court further orders, adjudges, and decrees that [the Cunninghams] and their successors in title are permanently enjoined and restrained from erecting any fence, wall, or other barrier so as to prevent the use by either [the Lays] or their successors in title of the land described herein; [the Cunninghams] are further ordered to remove forthwith any gate or any other obstacle erected across the land.

The Lays did not request injunctive relief. In their Respondent's Brief, the Lays admit "Counsel submitted . . . a proposed form of judgment which *erroneously* included injunctive relief language which was used by the [circuit] court." (Emphasis added.) Nonetheless, this Court is "authorized by Rule 84.14 to 'dispense with the remand process' and render a judgment the [circuit] court should have rendered." *In re N.H.*, 155 S.W.3d 820, 824 (Mo. App. E.D. 2005) (quoting *Norber v. Marcotte*, 134 S.W.3d 651, 662 (Mo. App. E.D. 2004)). Under Rule 84.14, this Court "may modify a challenged judgment by deleting portions of it." *Id.* "This Court may strike surplus language and otherwise affirm a judgment 'if the excess language is separable, does not affect the finality of the judgment and if the judgment is otherwise a proper subject for appellate disposition within the issue's frame.'" *S.K.B.-G. by & through J.P.G. v. A.M.G.*, 532 S.W.3d 231, 240 (Mo. App. E.D. 2017) (quoting *Lavalle v. Lavalle*, 11 S.W.3d 640, 651–52 (Mo. App. E.D. 1999)).

Here, the injunctive relief paragraph only provides an example of relief available to an easement holder if the owner of the land burdened by the easement violates the easement holder's rights. "An easement is a right to use the land of another for a particular stated purpose; it is not

the complete ownership of land." *Earth City Crescent Assocs., L.P. v. LAGF Associates-Mo, L.L.C.*, 60 S.W.3d 44, 46 (Mo. App. E.D. 2001). "The owner of land burdened by an easement retains the right of full dominion and use of the land affected by the easement; he may control and use his property in any way that does not substantially interfere with the reasonable use of the easement by the easement holder." *Id.* "The servient estate owner may not make the easement less useful or convenient." *Beiser v. Hensic*, 655 S.W.2d 660, 663 (Mo. App. E.D. 1983). "It is only when an obstruction interferes with the dominant owner's right of use that the dominant owner may remove it." *Maasen v. Shaw*, 133 S.W.3d 514, 520 (Mo. App. E.D. 2004). Such removal may be done through an injunction as requested. *See, e.g.*, *Carpenter-Union Hills Cemetery Ass'n*, 547 S.W.2d at 196. Thus, it was unnecessary for the circuit court to include the injunctive relief language in its judgment. Accordingly, this Court modifies the circuit court's judgment by deleting the paragraph quoted above granting injunctive relief. *See* Rule 84.14.

Point VI is granted to the extent the judgment is modified.

## Conclusion

The circuit court's judgment is affirmed as modified.

_____
Philip M. Hess, Judge

Thomas C. Clark II, C.J. and
John P. Torbitzky, J. concur.

17